Tommy NELSON, Petitioner–Appellant,

v.

Hans WALKER, Supt. Auburn Corr. Facility, Respondent–Appellee.

No. 1213, Docket 96–2354.

United States Court of Appeals, Second Circuit.

Argued May 2, 1997.

Decided Aug. 7, 1997.

Randa D. Maher, Great Neck, NY, for Petitioner–Appellant.

Sharon Y. Brodt, Assistant District Attorney, Queens County, Kew Gardens, NY (Richard A. Brown, District Attorney, John M. Castellano, Assistant District Attorney, Kew Gardens, NY, of counsel), for Respondent–Appellee.

Before: MINER and CALABRESI, Circuit Judges, and SHADUR, District Judge.*

MINER, Circuit Judge:

Petitioner-appellant Tommy Nelson appeals from a judgment entered in the United States District Court for the Eastern District

* The Honorable Milton I. Shadur of the United States District Court for the Northern District of Illinois, sitting by designation.

of New York (Sifton, J.) denying his petition for a writ of habeas corpus, the court having determined that Nelson's confession was not coerced by the police and therefore that Nelson was not deprived of his Fifth Amendment privilege against compulsory self-incrimination. The district court presumed the correctness of the state court's factual findings that Nelson had not been threatened and beaten by the police prior to giving his confession, and further determined that Nelson's claims, other than his coercion and *Miranda* claims, were barred from federal habeas review.

For the reasons that follow, we affirm.

## BACKGROUND

On December 16, 1981, Anthony Abruzzo, an off-duty police officer, was killed while trying to assist his father-in-law, Joseph Mehran, who was being robbed in the driveway of his own home. In March of 1982, police arrested Nelson on the basis of information provided by Nelson's former girlfriend, Shirley Fuller, who had been apprehended after attempting to cash stolen checks that were linked to the crime.

Nelson was taken to a police station, where he was interrogated. Nelson did not sign or initial any document indicating that he waived his *Miranda* rights. The interview was not recorded on audio or video tape, and no attorney was present. At some point during the interrogation, Nelson was taken by the police to a hospital. There, he was treated for a wound on his stomach and given a tetanus shot. He subsequently was brought for further processing to a police station different from the one in which he had been interrogated. Two days later, one of the detectives who had been present during the interrogation typed a standard police report form. The report included statements, purportedly made by Nelson during his interrogation, describing Nelson's participation in the robbery that led to Officer Abruzzo's death. The detective who typed the police report form later testified that the

contents of the form were derived from notes he had taken during the interrogation and did not represent a verbatim recounting of Nelson's statement.

According to the officers involved in the arrest and interrogation, Nelson was advised of his rights and voluntarily waived them. Nelson was not subjected to police brutality, nor was he threatened or coerced into making his statements to the police. Two detectives asked Nelson questions, and one of the detectives wrote down Nelson's answers in a notebook in the form of a narrative. Two days later, the detective who had taken the notes typed the police report form, which memorialized the incriminating statements Nelson voluntarily made to the police shortly after being taken into custody.

Nelson disputes the state's version of the circumstances surrounding his purported confession. In his version of the facts, Nelson asserts that his rights were not read to him and he did not make the statements attributed to him. Nelson testified that on March 23, 1982, the arresting officers handcuffed him, placed him in an unmarked car, and physically abused him throughout the ride to the stationhouse. He asked for a lawyer, and was told that he had "lost all rights." Upon arriving at the stationhouse, he was taken into a room, still handcuffed, where approximately ten to fifteen officers had gathered. He claims that he was beaten again in the stationhouse, where he was subjected to intensive interrogation. When he continued to maintain his innocence, he suffered another beating, this time with one of the detectives striking him on the back and stomach with a rope or a wire.

There also were different versions of the origin and nature of the injuries for which Nelson required medical attention on the day of his arrest. According to Nelson, both his stomach and back were injured when the police beat him in order to coerce a confession. According to the state, Nelson sustained the abrasion on his stomach when the police restrained him during an attempted escape from the room in which he was being interviewed, and this occurred several hours after he already had confessed voluntarily.

The state offers no explanation for the injuries on Nelson's back. However, the state apparently infers from the medical records, which described only the abrasion on Nelson's stomach, that the wounds on Nelson's back necessarily were inflicted (or self-inflicted) at some point after Nelson had been treated at the hospital, and, therefore, after he already had confessed.

Nelson and two co-defendants, Larry Johnson and Derrick Jones, subsequently were charged with second degree murder, second degree attempted murder, first degree robbery, and second degree criminal possession of a weapon. Prior to trial, Nelson made a motion to suppress the statement given to the police on the day of his arrest. He alleged that he had not been advised of his *Miranda* rights, and that his confession was not voluntary, but was coerced by police officers who had threatened and beaten him following his arrest. He also asked the court to find that the police lacked probable cause for his arrest and that Shirley Fuller's statements were insufficient to establish probable cause, and moved for suppression of his confession on that basis as well.

A Legal Aid Society attorney, who had represented Nelson and Jones at their arraignment one day after their arrest in March of 1982, testified that he saw red marks on both defendants' stomachs and backs, and that he had requested medical attention for Nelson.[1] Another attorney testified that when he saw Nelson and Jones approximately six days after their arrest, both had similar red marks on their stomachs and backs, and both told him that the police had beaten them until they confessed.

After a suppression hearing, the state court determined that Fuller's statements established probable cause for Nelson's arrest. The court also found credible the police officers' testimony that Nelson's confession was voluntary and that, prior to making the statement, he was fully advised of his *Miranda* rights and voluntarily waived them.

On January 25, 1983, following a jury trial in the Queens County Supreme Court, Nel-

1. The legal aid attorney had defendants lift their shirts and show the wounds at the arraignment.

son was convicted on one count of second degree murder, one count of second degree attempted murder, three counts of first degree robbery, and one count of second degree criminal possession of a weapon. On May 24, 1983, he was sentenced to concurrent prison terms of 25 years to life on the murder conviction, and lesser concurrent sentences on the remaining counts.

Nelson appealed his conviction to the Appellate Division, Second Department. He argued that the trial court erred by (1) finding his confession voluntary; (2) finding that the police had probable cause to arrest him; (3) charging the jury with respect to the state's burden of proof concerning his alibi; and (4) imposing an excessive sentence.

On December 1, 1986, the Appellate Division affirmed Nelson's conviction. *People v. Nelson,* 125 A.D.2d 339, 509 N.Y.S.2d 67 (2d Dep't 1986). The Appellate Division found that the medical evidence did not support Nelson's claim that the confession was coerced by police beatings. *See id.* at 340, 509 N.Y.S.2d 67. The court also found that the police had probable cause to arrest Nelson, having established the reliability of their informant. *See id.* at 339, 509 N.Y.S.2d 67. On February 6, 1987, Nelson's application for leave to appeal to the New York Court of Appeals was denied. *People v. Nelson,* 69 N.Y.2d 831, 513 N.Y.S.2d 1038, 506 N.E.2d 549 (1987). Nelson also made two unsuccessful post-conviction motions challenging his conviction, pursuant to N.Y.Crim. Proc. Law §§ 330.30 and 440.10, respectively.

In April of 1994, Nelson, acting *pro se,* petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claimed that the police lacked probable cause to arrest him, did not properly advise him of his rights, and coerced his confession in violation of his rights under the Fifth Amendment. He also claimed that the trial court erred in failing to suppress his confession, in instructing the jury concerning his alibi testimony, and in sentencing him.

By order filed March 27, 1996, the district court denied Nelson's petition. In its ruling, the district court determined that Nelson's jury instruction, sentencing and Fourth Amendment claims were procedurally barred from federal habeas review, and, in any event, lacked merit. With regard to Nelson's coercion claim, the district court determined that Nelson was not deprived of his Fifth Amendment privilege against compulsory self-incrimination as a result of police coercion. In reaching this conclusion, the district court presumed the correctness of the state court's factual findings that Nelson had not been threatened and beaten by the police prior to confessing. Judgment was entered accordingly on April 3, 1996. Nelson sent to the district court a notice of appeal dated April 16, 1996. The district court received this notice on May 3, 1996, and granted a Certificate of Probable Cause ("CPC") dated May 16, 1996. This appeal followed.

## DISCUSSION

### I.  The Certificate of Probable Cause

As an initial matter, respondent-appellee Hans Walker, superintendent of the Auburn Correctional Facility (the "state"), argues that the district court erred in granting the CPC because the requirements of the newly amended habeas statute were not satisfied. Specifically, the state argues that (1) Nelson failed to make the requisite "substantial showing" that he was denied a constitutional right, and (2) the district court did not specify on which issue(s) Nelson satisfied the "substantial showing" requirement. We reject these contentions.

### A.  Substantial Showing

Prior to the enactment of section 102 of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub.L. No. 104–132, § 102, 110 Stat. 1217, a state habeas petitioner was required to obtain a CPC in order to appeal the denial of a habeas petition. *See* 28 U.S.C. § 2253(c) note (as amended). Section 102 of the AEDPA amended § 2253 to require that a petitioner receive a Certificate of Appealability ("COA") rather than a CPC.

The Supreme Court recently has determined that "the new provisions of chapter 153 [of which § 2253(c) is a part] generally apply only to cases filed after the [AEDPA] became effective." *Lindh v. Murphy,* ——

U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). Nelson petitioned the district court for a writ of habeas corpus, the petition was denied, and a notice of appeal was filed, all before the AEDPA became effective on April 24, 1996.[2] Thus, because the new COA requirements were inapplicable to Nelson's petition, *see id.*, the district court did not err in issuing Nelson a CPC rather than a COA.

■ Moreover, we find that the district court did not err in granting Nelson the CPC. In order to be granted a CPC, a petitioner must "make a substantial showing of the denial of [a] federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3393, 77 L.Ed.2d 1090 (1983) (internal quotation omitted and alteration in original).[3] In describing this requirement, the Supreme Court has explained that "the petitioner need not show that he should prevail on the merits. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Id.* at 893 n. 4, 103 S.Ct. at 3395 n. 4 (quotation and internal quotation omitted and alteration in original).

In the instant case, Nelson alleged that he was coerced into confessing by police beatings, and that the state court erred in refusing to suppress the confession. It is undisputed that Nelson sustained injuries on his back and stomach. However, the parties vigorously dispute whether those injuries were sustained before or after he confessed and—with the exception of the abrasion on his stomach—whether the wounds were caused by the police. With respect to Nelson's alleged waiver of his *Miranda* rights, one officer, Detective Shields, testified that he advised Nelson of his rights, but that Nelson was not asked to sign or initial anything to indicate he understood and waived those rights. Further testimony established that the officer did not read back to Nelson the statements attributed to him, did not ask Nelson if he wanted to make any changes, and did not ask Nelson to sign or initial the notes taken during the interrogation from which the typed statement subsequently was derived. Nelson's interview was not otherwise recorded, e.g., by tape recorder or videotape, and no district attorney was present when Nelson's statement was taken.

From these facts, the question of whether Nelson was denied a constitutional right appears to be "debatable among jurists of reason," *id.* (quotation omitted), a question that could have been resolved differently below, or, at least, one that is "adequate to deserve encouragement to proceed further," *id.* (quotations omitted). Therefore, Nelson satisfied the requirement to substantially show the denial of a constitutional right.

### B. Specified Issues

■ The state also argues that the district court erred in failing to indicate "which specific issue or issues satisfy the [substantial showing requirement]." 28 U.S.C. § 2253(c)(3) (as amended). We reject this argument.

Although we held in *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir.1996), that the specified issues requirement of § 2253(c)(3) (as

---

**2.** A *pro se* habeas petitioner is deemed to have filed his notice of appeal "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988); *see* Fed. R.App. P. 25(a)(2)(C) ("A paper filed by an inmate confined in an institution is timely filed if deposited in the institution's internal mail system on or before the last day for filing."). Nelson's notice of appeal is dated April 16, 1996. Although we do not know the date on which Nelson's petition entered the institution's internal mail system, the state concedes that Nelson filed it before the effective date of the AEDPA. Thus, we deem his notice to have been filed prior to the effective date of the new legislation.

**3.** The state contends that the district court erred in granting the CPC because Nelson allegedly failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2) (as amended). Although we have determined that the new COA requirements have no retroactive effect on Nelson's petition in light of *Lindh*, —— U.S. at ——, 117 S.Ct. at 2068, we also note that "the substantive standard for a COA is the same as the standard for the prior CPC." *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir.1996).

amended) should be applied retroactively, that decision has been overruled by *Lindh,* — U.S. at ——, 117 S.Ct. at 2068. Thus, because Nelson filed his petition prior to the effective date of the AEDPA, the specified issues requirement was inapplicable, *see id.* Therefore, the CPC is not defective on the ground that the district court failed to specify the issue certified for appeal.

## II. Compulsory Self-Incrimination

■ Turning now to the merits of the appeal, we are faced with Nelson's contention that the state court erred in failing to suppress his confession. He contends that the district court should not have rejected his claim that his Fifth Amendment privilege against self-incrimination was violated by the alleged police coercion inducing his confession. In particular, he argues that the district court erred in deferring to the state court's determination that intimidation tactics had not been used, because the state court's findings were not supported by the record. We reject this contention.

■ We review *de novo* a district court's denial of a petition for a writ of habeas corpus. *See Williams v. Bartlett,* 44 F.3d 95, 99 (2d. Cir.1994). When reviewing a habeas petition, "[t]he factual findings of the New York Courts are presumed to be correct." *Green v. Scully,* 850 F.2d 894, 900 (2d Cir. 1988). However, "[t]he statutory presumption refers to historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Id.* If "the material facts were not adequately developed at the State court hearing or the District Court finds that the factual determination is not fairly supported by the record," the presumption of correctness is set aside. *Pagan v. Keane,* 984 F.2d 61, 64 (2d Cir.1993) (citations and internal quotations omitted) (refer-

ring to 28 U.S.C. § 2254(d)(3) and (8) (1994)).[4]

■ "The police may use a defendant's confession [obtained during a custodial interrogation] without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice." *United States v. Anderson,* 929 F.2d 96, 98 (2d Cir.1991). The prosecution bears the burden of demonstrating by a preponderance of the evidence that a confession was voluntary. *See id.* at 99. "[T]he ultimate issue of voluntariness is a legal question requiring independent federal determination." *Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991) (internal quotation omitted). "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." *Green,* 850 F.2d at 901. We explained in *Green* that factors to be considered include: the characteristics of the accused, such as his experience, background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychological coercive tactics. *See id.* at 901–02. "[S]ubsidiary questions, such as the length and circumstances of [an] interrogation," *Miller v. Fenton,* 474 U.S. 104, 117, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985), or whether "the police engaged in the intimidation tactics alleged by the defendant," are entitled to the presumption of correctness, *id.* at 112, 106 S.Ct. at 451.

Based upon the record of the state court proceedings, it is clear that the state court's factual findings were made after extensive development of the material facts, and are supported by the record. Thus, the state

4. Since the initiation of the action giving rise to this appeal, Congress has altered the statutory provisions governing our review of a state court's factual findings and legal conclusions in habeas cases. With respect to the presumption of correctness attached to a state court's factual findings, Congress eliminated the list of circumstances under which the presumption will be rebutted, *see* 28 U.S.C. § 2254(d) (1994), and

instead simply provided that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence," 28 U.S.C. § 2254(e)(1) (as amended). However, the provisions of subsection (e)(1) are not retroactive and therefore will not be applied in this case. *See Lindh,* —— U.S. at ——, 117 S.Ct. at 2068.

court's factual findings are entitled to the presumption of correctness. *See Pagan*, 984 F.2d at 64.

Nelson's suppression hearing was held in November of 1982. The hearing court rejected Nelson's contention that his confession was the result of being threatened and beaten by the police. Its ruling depended upon the factual findings that (1) Nelson voluntarily waived his rights; (2) the police officers who testified were credible; and (3) the medical record from Nelson's examination at the hospital, which referred to the injury on Nelson's stomach but not to the injuries on his back, rebutted Nelson's version of events concerning the alleged beating to which he had been subjected prior to confessing. Although two attorneys testified for the defense that they had seen the welts on Nelson's back, the hearing court found that neither witness could ascertain when or how the injuries had been sustained.

At the subsequent trial, Nelson again argued that his confession was not voluntary. While testifying on his own behalf, Nelson stated that his back had been whipped by the police officers prior to his examination at the hospital, and that, although the attending physician had looked at his bare back, he believed that the medical records did not mention the injuries on his back because the physician had been intimidated by the police officers who remained present throughout the examination. The police witnesses were cross-examined on the injuries Nelson sustained while in custody and on the circumstances surrounding Nelson's confession. The defense also presented witnesses of its own. Rejecting Nelson's version of events, the jury found Nelson guilty.

Nelson then appealed. The Appellate Division determined that the hearing court did not "err in concluding that the defendant's confession should not be suppressed as involuntary.... Here, the medical evidence submitted did not bear out the defendant's claim." *Nelson*, 125 A.D.2d at 339–40, 509 N.Y.S.2d 67.

The state court's findings were evaluated and accepted by the district court. As the district court explained in denying Nelson's petition:

Here there is no reason to reject the state court's credibility determination that the police officers told the truth and that petitioner did not. There is substantial evidence to support that determination. Police personnel testified that petitioner was advised of his *Miranda* rights and voluntarily confessed within one half-hour of his arrest. Evidence of physical abuse was explained by circumstances unrelated to petitioner's confession.

In addition, the defense presented its theory of the case to the jury and cross-examined police personnel with respect to their testimony that the confessions were rendered voluntarily and that petitioner attempted to escape. The petitioner has failed to demonstrate that the findings of the judge, jury, and state appellate court are not entitled to the substantial deference afforded to such cases.

(J.A. 16.)

Nelson attempts to show that a proper application of the totality of the circumstances test reveals that his confession was not voluntary. In essence, he argues that his own version of events is more credible than that of the officers. Nelson's claim that he did not receive the Miranda warnings, his graphic allegations of police brutality, and the visible injuries that he apparently sustained at some point during the first 24 hours of custody, all serve to support his side of the story. There were, however, two sides of the story, and the state court came down on the other side.

Nelson has not shown that the material facts were not adequately developed at the state court hearing or that the record does not fairly support the state court's factual determinations, *see Pagan*, 984 F.2d at 64, nor has he established any of the other circumstances enumerated in 28 U.S.C. § 2254(d) (1994). In the absence of such a showing, the district court appropriately presumed the factual findings of the state court to be correct with respect to the circumstances of Nelson's interrogation and the issue of police brutality. *See Miller*, 474 U.S. at 112, 117, 106 S.Ct. at 450, 453; *Green*, 850 F.2d at 900. Therefore, accepting that the

police did not resort to unnecessary force during Nelson's interrogation, and that the *Miranda* warnings were properly administered, no ground remains upon which we could independently determine that Nelson's confession was not voluntary. On this basis, we hold that the district court properly denied Nelson's petition.

We have considered carefully petitioner's remaining contentions and find them all to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.