**Philip VASTA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 97 CIV. 2923(RLC).**

United States District Court, S.D. New York.

Nov. 17, 1999.

Silverman, Collura, Chernis & Balzano, P.C., New York City, Paul Chernis, of counsel, for Petitioner.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, Joseph V. Demarco, of counsel, for Government.

## *OPINION*

ROBERT L. CARTER, District Judge.

## I. BACKGROUND

On February 4, 1998, the court filed an endorsement dismissing Philip Vasta's petition under 28 U.S.C. § 2255 to vacate his sentence ("Endorsement"), familiarity with which is assumed. Vasta now petitions for a certificate of appealibility ("COA") from the court's dismissal of his § 2255 petition, pursuant to 28 U.S.C. § 2253. For reasons set out more fully below, the request for a COA is denied. Most of the facts involved in Vasta's petition for a COA were set out in the court's Endorsement dismissing Vasta's § 2255 petition; therefore, only those facts essential to understanding Vasta's COA petition will be presented again here.

Vasta and seven co-defendants went to trial in the Southern District of New York on November 12, 1986, on a multi-count indictment, charging them with violations of various federal statutes prohibiting the possession, distribution and the sale of heroin. Vasta was charged only on two counts of the indictment: Count I, conspiracy to distribute and possession with intent to distribute drugs, in violation of 21 U.S.C. § 846, and Count II operating a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848. On December 8, 1986, the jury found Vasta guilty of Count I, conspiracy to distribute drugs, (Tr. at 2791); it continued its deliberations but remained deadlocked on the CCE charge. (Tr. at 2794–95).[1] On December 9, 1986, after the jurors had been discharged and informed that they must continue to deliberate on the CCE charge the following day, one juror left a note for the court indicating that the stress of jury deliberations was aggravating her high blood pressure, and that she would not return to court to continue the deliberations. The court received the juror's note the following morning, and the juror did not appear for deliberations. (Tr. at 2802). On the same morning, a second juror advised the court that she wanted to be excused because she was overwhelmed by the stress of the jury deliberations. (Tr. at 2803).

The court solicited suggestions from counsel about how the loss of jurors might be resolved. (Tr. at 2804–05). Vasta's counsel conferred with the government, with Vasta himself, and discussed Vasta's options with Vasta and his family as a group before arriving at a decision with his client. (Tr. at 2809–10).

After these discussions, Vasta withdrew his not guilty plea and entered a guilty plea on two charges named in a second superceeding indictment: Count XIV, charging him with violating 21 U.S.C. § 841(b)(1)(A), and Count XV, charging him with violating 21 U.S.C. § 841(b)(1)(B); these charges venue lay in the Eastern District of New York. In exchange for the guilty pleas, the government dismissed the CCE charge Vasta was being tried for in the Southern District of New York, and agreed not to prosecute Vasta on any of the other superceding indictment counts with venue in the Eastern District of New York, namely Counts V, IX, XI & XVII. (Tr. at 2808–2811). The court accepted Vasta's guilty plea after Vasta stated that he understood and accepted the plea agreement his counsel had negotiated with the government. (Tr. at 2811–12).

---

**1.** Tr. refers to the November 12, 1986 trial transcript.

Vasta now asserts that he is entitled to a COA because the issues raised in his § 2255 petition (concerning the above described facts) show that he was denied several of his constitutional rights by the disposition of the 1986 trial, namely: his Sixth Amendment right to effective assistance of counsel; his Fifth Amendment right not to be placed in double jeopardy; the substantial right to be fully informed before entry of a guilty plea and; the substantial right to an untainted jury.

## II. DETERMINATION

The Anti–Terrorism and Effective Death Penalty Act of 1996, provides that a petitioner may appeal from a final order denying his motion to vacate his sentence under 28 U.S.C. § 2255 only if he has been granted a COA. *See Soto v. United States,* 185 F.3d 48, 51 (2d Cir.1999)(discussing 28 U.S.C. § 2253(c)(1)). A district court may grant petitioner a COA only upon "a substantial showing of the denial of a constitutional right." *Id; see also,* 28 U.S.C. § 2253(c)(2). Specifically, petitioner must demonstrate "that [the issues in the appeal] are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Nelson v. Walker,* 121 F.3d 828, 832 (2d Cir.1997). Petitioner "need not show that he should prevail on the merits." *Id.* Additionally, when the court grants a COA, it must indicate which specific issue or issues that petitioner has raised which satisfy the COA standard. *See Tankleff v. Senkowski,* 135 F.3d 235, 241–42 (2d Cir.1998) (discussing § 2253(c)(3)).

### 1. Effective Assistance of Counsel Claims

Vasta argues that the ineffective assistance of counsel claims raised in his § 2255 petition provide sufficient ground for the granting of a COA. Vasta contends that his counsel misinformed him when he advised Vasta that if a mistrial resulted after the jury had convicted him on the conspiracy count but remained deadlocked on the CCE count, that Vasta could be retried on the CCE count. Vasta argues this advice was objectively erroneous because he had done nothing to cause a mistrial, and therefore retrial on the CCE count was barred under principles of double jeopardy.

Vasta claims that counsel's advice was objectively erroneous because the conspiracy count he was charged with, 21 U.S.C. § 846, is a lesser included offense of the CCE violation with which he was charged, 21 U.S.C. § 848, *see United States v. Sperling,* 560 F.2d 1050, 1055 (2d Cir.1977), and therefore he could not have been retried on the CCE count after the jury deadlocked on this charge. *See Rutledge v. United States,* 517 U.S. 292, 296, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (prohibiting prosecution for CCE and conspiracy charges when these charges are based on the same conduct).

Vasta's Sixth Amendment ineffective assistance of counsel claims arise under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires that a party show "(1) that his attorney's performance fell below an 'objective standard of reasonableness,' and (2) 'that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995)(quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Under *Strickland,* an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland* at 466 U.S. at 690, 104 S.Ct. 2052, as courts adopt a "strong presumption that counsel's conduct [falls] within the wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. 2052, and will not second guess counsel's reasonable assessment of the benefits of competing courses of action. *Id.* at 691, 104 S.Ct. 2052. Here the court does not as-

sess the merits of Vasta's ineffective assistance of counsel claims, but merely determines whether his petition raises a Sixth Amendment issue about which reasonable jurists would disagree. *See Nelson*, 121 F.3d at 832.

### a. Mistrial and the Risk of Double Jeopardy

Vasta's complaints about counsel's advice regarding the risk of mistrial at the 1986 trial and its effect on his double jeopardy protections require that the court review counsel's strategic assessments about Vasta's case, an inquiry in which the court treats counsel's determinations with substantial deference. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Counsel here investigated potential solutions to the problems caused by the loss of jurors on Vasta's case and how Vasta's chosen solution would effect his rights in the event of mistrial. *Id.* Counsel considered continuing with eleven jurors, as authorized by Federal Rule of Criminal Procedure 23, but upon conferring with the court he recognized that forcing a reluctant juror to continue on the jury panel would not have been in Vasta's best interest. (Tr. at 2808). Counsel also recognized that Vasta could agree to continue with a ten person jury, *id.*, and he also realized that Vasta's refusal to do so would trigger a mistrial, leaving Vasta vulnerable to retrial on the CCE charge. *See Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (recognizing that when successive trials are caused by the defendant he is not entitled to double jeopardy protection). Counsel further recognized that Rule 23 barred the use of alternate jurors under the circumstances. As the court indicated in its Endorsement on the § 2255 petition, counsel also reasonably concluded that Vasta could be retried on the CCE charge if the the jury's inability to agree on the charge resulted in a mistrial. *See United States v. Ustica*, 847 F.2d 42, 48 (2d Cir.1988)(recognizing that a mistrial caused by a hung jury may allow a defendant to be retried). Based on the above-mentioned factors, counsel reasonably concluded that Vasta would likely be retried on the CCE count, and therefore counsel advised Vasta to consider entering a plea agreement.

### b. Double Jeopardy Claims Under United States v. Rutledge

Vasta's claim, that his counsel erred when he failed to advise him that he could not be prosecuted for both conspiracy and CCE charges, is based on a change of law in this circuit. In *Rutledge v. United States*, 517 U.S. at 296, 116 S.Ct. 1241, the Supreme Court established that a defendant cannot be convicted for both CCE and conspiracy charges when these charges are based on the same conduct because this course of prosecution violates principles of double jeopardy. However, at the time of Vasta's trial, courts in the Second Circuit did allow defendants to be tried for both offenses simultaneously. *See e.g., United States v. Benevento*, 836 F.2d 60, 73 (2d Cir.1987), *cert. den.*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Estrada*, 751 F.2d 128, 134 (2d Cir.1984), *cert. den.*, 474 U.S. 830, 106 S.Ct. 97, 88 L.Ed.2d 79 (1985). Courts in this circuit would enter conviction for defendants on both conspiracy and CCE charges, but issue sentence only on the CCE offense. *See e.g., United States v. Rosario*, 111 F.3d 293 (2d Cir.1997)(discussing the aforementioned practice). They would sentence defendants on the conspiracy conviction only if the CCE conviction and sentence were vacated on appeal. *Id.* Indeed, Vasta's co-defendant, Orreste Abbamonte was tried and sentenced in this manner. *See United States v. Amen*, 831 F.2d 373, 384 (1987).

■ Because the prevailing practice in this circuit was to allow conviction for both CCE and conspiracy charges at the time of Vasta's trial, the court must conclude that Vasta's counsel's advice was well within the objective standard of reasonableness established by *Strickland.*

Although Vasta has not identified any error in counsel's understanding of the double jeopardy issues in his case, the court also recognizes that even if the pending CCE charge could not have been imposed on double jeopardy grounds, counsel's advice to Vasta to accept the government's plea agreement fits within *Strickland*'s definition of reasonable strategic assistance. *See Strickland,* 466 U.S. at 681, 104 S.Ct. 2052. Vasta faced numerous pending charges, and his counsel's advice helped him avoid the substantial prison sentences likely to be imposed for these charges. Vasta faced twenty years imprisonment each for Count XIV and Count XV, the two charges with venue in the Eastern District of New York that he pled to in the 1986 trial. Additionally, there were other charges with venue in the Eastern District of New York: Count V which carried a sentence of twenty years imprisonment; Count IX which carried a sentence of twenty years, Count XI which carried a sentence of twenty years; and Count Seventeen which carried a sentence of two years. In exchange for his plea on Counts XIV and XV from the charges with venue in the Eastern District of New York, the government agreed not to prosecute petitioner for Counts V, IX, XI, and XVII, the remaining Eastern District of New York charges and for the pending CCE charge in the Southern District of New York.

The beneficial value of Vasta's plea agreement becomes apparent when one realizes that the court could have sentenced Vasta to a sixty-two year prison term for the charges with venue in the Eastern District of New York alone, if the court ruled that the sentences for the charges should have been served consecutively. Therefore counsel's advice to Vasta, to plead guilty to Counts XIV and XV and avoid prosecution on Counts V, IX, XI, and XVII was sound on its own, regardless of whether plaintiff actually faced sentence for the CCE charge. When one considers that the plea agreement also insulated Vasta from the potential life sentence that could have been imposed from the CCE charge, counsel's advice to Vasta to accept the plea agreement seems abundantly reasonable.

Because Vasta cannot show, within the parameters of *Strickland v. Washington,* that he was substantially deprived of his Sixth Amendment to right to counsel, he is not entitled to a COA on this ground.

### 2. Claim of Jury Taint

■ Vasta also claims that he is entitled to a COA because the jury in his case was tainted when the court accepted partial verdicts. The court's decision to accept a partial verdict does not, standing alone, taint a jury. *See United States v. Levasseur,* 816 F.2d 37, 45 (2d Cir.1987) ("This court has long allowed partial jury verdicts which resolve less than all counts as well as those which resolve all counts against less than all defendants"). There must be other factors involved before the court's taking of partial verdicts constitutes reversible error. *See United States v. DiLapi,* 651 F.2d 140 (2d Cir.1981). The taking of partial verdicts is the only source of jury taint raised by Vasta's petition for a COA; therefore, this ground fails to meet the COA yardstick requiring a showing of a substantial deprivation of a constitutional right.

### 3. Claim of Defect in the Plea Inducement Process

■ Vasta also argues that the Fifth Amendment claim in his § 2255 petition, that his plea in the 1986 trial was induced in a manner that violated his due process rights, merits a COA. The court declines to rule on the substance of this Fifth Amendment claim, as petitioners generally are barred from raising issues in collateral attacks that they have not raised on direct appeal. *See Rosario v. United States,* 164 F.3d 729, 731 (2d Cir.1998). Vasta's allegations of defect in the plea inducement process were not raised at his sentencing and he waived his right to appeal; there-

fore, he denied himself the opportunity to properly raise his Fifth Amendment claim on direct appeal. The court will only allow petitioner to raise a new claim in a collateral attack, if he can show "(1) cause for failing to raise the issue, and prejudice resulting therefrom," or (2) prove he is actually innocent of the crimes charged. *Id.* Vasta has not provided evidence explaining why he failed to raise the issue about the problems in the plea process at his sentencing and he has not offered evidence showing any resulting prejudice. Furthermore, Vasta has not provided evidence showing that he is innocent of the charges to which he pled. Therefore, he cannot be granted a COA based on the issue in his § 2255 petition that there was defect in the inducment of his plea.

In sum, because Vasta has failed to show that he was substantially deprived of any constitutional right, the court denies his request for a COA.

**IT IS SO ORDERED**