## AMERICAN SAMOA GOVERNMENT, Plaintiff

### v.

## AFA ALATAUA, Defendant.

High Court of American Samoa
Trial Division

CR No. 116-00

April 18, 2001

Before KRUSE, Chief Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Suzanne L. Tiapula, Assistant Attorney General
        For Defendant, Bentley C. Adams III, Assistant Public
        Defender

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

### Facts

Defendant Afa Alataua ("Alataua") is charged with nine felony counts, consisting of two counts of rape; two counts of sodomy, two counts of incest, two counts of sexual abuse in the first degree, and one count of assault in the third degree. These charges stem from alleged incidents of sexual intercourse and other sexual contact by Alataua with his sixteen-year-old step-daughter ("complainant"), and an alleged incident of assault by Alataua upon his wife.

On December 8, 2000, after a report that Alataua was attempting to

entice the complainant to go with him, police apprehended him and placed him in custody at the Tafuna Correctional Facility ("TCF"). Meanwhile on the same day, District Court Judge John L Ward II issued a warrant for Alataua's arrest and commitment to the TCF without bail.

While Alataua was held at the TCF, he refused to speak to any of the officers present, and specifically requested that he communicate only with Lieutenant Aiga Suitonu ("Lt. Suitonu"). On the morning of December 9, 2000, Lt. Suitonu, a veteran police officer holding a supervisory position with the Domestic Violence and Sexual Assault Division of the Department of Public Safety, arrived at the TCF at approximately 10:00 a.m. Accompanied by Detective Michael Nix ("Det. Nix"), Lt. Suitonu met with Alataua. The watch commander at the TCF invited the officers and Alataua to use his office so that they might have more privacy. Both Lt. Suitonu and Det. Nix were in plain clothing.

Before Lt. Suitonu began any discussion with Alataua, she wrote down the time of 10:00 a.m. at the top of Alataua's statement form. She then asked Alataua why he wished to speak with her, to which he replied that he needed Lt. Suitonu's help. Lt. Suitonu then told him to wait while she read him his rights. Det. Nix, a native Samoan speaker, read Alataua his rights in the Samoan language. Det. Nix advised Alataua that he had the right to remain silent, the right to have an attorney present and/or appointed for him, and the right to discontinue questioning at any time. Nix also informed Alataua that any statements made may be used against him later in court. Lt. Suitonu asked Alataua if he understood his rights, to which he answered affirmatively. Police did not threaten or otherwise coerce Alataua to induce him to make a statement.

According to Lt. Suitonu, at approximately 10:30 a.m., Alataua indicated that he understood those rights by signing a one-page document, which listed his rights in the Samoan language. (This form is commonly known as the constitutional rights waiver form ("waiver form"). Then, after discussing the circumstances surrounding the charges against him with Suitonu, Alataua wrote a statement regarding this case. Alataua completed and signed his written statement at approximately 11:15 a.m., as indicated on the bottom of his written statement. At sometime during this process, Lt. Suitonu served Alataua with the warrant for his arrest.

Alataua moves this Court to suppress his oral and written statements made on December 9, 2000. After due consideration of the motion, we deny it for the following reasons.

## Discussion

■ The Revised Constitution of American Samoa guarantees individuals

the right against self-incrimination. Article I § 6 of the American Samoa Constitution states that "[n]o person . . . shall . . . be compelled in any criminal case to be a witness against himself." Also, the Due Process Clause of the Revised Constitution of American Samoa, Article I § 2, requires that a confession be voluntary. In interpreting the right against self-incrimination, this Court has adopted the Supreme Court's ruling in *Miranda v. Arizona*, 384 U.S. 436 (1966), which requires that certain protections be afforded criminal defendants. *See Am. Samoa Gov't v. Luki*, 21 A.S.R.2d 84, 86 (Trial Div. 1992); *Am. Samoa Gov't v. Fealofa`i*, 24 A.S.R.2d 10, 11-12 (Trial Div. 1993).

Under *Miranda*, the right against self-incrimination requires that anyone in police custody be advised, before interrogation by the police, of his or her right to remain silent, and right to counsel. *Miranda*, 384 U.S. at 497. "The police may use a defendant's confession [obtained during a custodial interrogation] without transgressing his . . . right [against self-incrimination] only when the decision to confess is the defendant's free choice." *United States v. Anderson*, 929 F.2d 96, 98 (2d Cir. 1991). The court must look to the totality of the surrounding circumstances to determine whether a confession is made voluntarily. *See Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988).

In *United States v. McGuire*, 957 F.2d 310, 315 (7th Cir. 1992), the Court, after considering the totality of the circumstances, concluded that the defendant's confession was voluntarily made. These circumstances included evidence that the defendant appeared sober, was not under any duress during the interview, and had been advised of his *Miranda* rights before the interrogation. *See also Nelson v. Walker*, 121 F.3d 828, 833-34 (2d Cir. 1997).

In the instant case, as a preliminary factual matter, we find that police properly complied with *Miranda* before interrogating Alataua. Alataua contends that the times as reflected on the waiver form and statement show that the statement was elicited before he was read his constitutional rights. However, we find that Lt. Suitonu is a credible witness, and accordingly believe her testimony that before making any statement, she advised Alataua of his constitutional rights.

Furthermore, we find that the totality of the circumstances surrounding Alataua's post-arrest interrogation demonstrates that Alataua's statements were voluntarily made. The fact that Alataua refused to talk to police officers at the TCF and specifically asked for Lt. Suitonu demonstrates his willingness to make a statement to police. In addition, none of the elicited facts shows that Alataua was coerced or threatened either before or during his questioning. In fact, during the interview, Lt. Suitonu and her companion were dressed in civilian

clothing, and the interview took place in a private office. Finally, police advised Alataua of his rights as required by *Miranda* before Alataua made any statements to police. Accordingly, we find that Alataua' statements were made of his own "free choice" and were not procured by police in violation of Alataua's constitutional right against self-incrimination.

### Conclusion and Order

For the foregoing reasons, defendant Alataua's motion to suppress his statements is denied.

It is so ordered.