**Ricardo NOVA, Petitioner–Appellant,**

**v.**

**George BARTLETT, Superintendent Elmira Correctional Facility, Respondent–Appellee.**

**Docket No. 99–2576**

United States Court of Appeals, Second Circuit.

Argued: March 17, 2000

Decided: May 3, 2000

[redacted]

David Touger, Law Office of Peluso & Touger, New York, NY, for Petitioner–Appellant.

Donald J. Siewert, Assistant District Attorney (Robert M. Morgenthau, District Attorney, New York County, and Mark Dwyer, Assistant District Attorney, of counsel), New York, NY, for Respondent–Appellee.

Before: SACK, KATZMANN, and GIBSON,* Circuit Judges.

PER CURIAM:

Petitioner–Appellant Ricardo Nova appeals from a judgment of the United States District Court for the Southern District of New York (Constance Baker Motley, *Judge*) denying his petition for a writ of habeas corpus. Nova alleges that he was improperly interrogated by the police before he received the warning required by *Miranda v. Arizona,* 384 U.S. 436, 86

S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court held, although with obvious misgivings, that Nova was not in custody prior to the receipt of his warnings. *Nova v. Bartlett,* 63 F.Supp.2d 449, 457–58 (S.D.N.Y.1999). The court further held that even if Nova's pre-warning statements were improperly obtained their admission at trial amounted to harmless error, and that in any case two later, fully warned confessions were not rendered inadmissible by the earlier conduct of the police. *Id.* at 458. We affirm solely on the ground that Nova's warned confessions were admissible and that the admission of any pre-warning statements was harmless error.

## BACKGROUND

On the night of September 2, 1990, Brian Watkins, a tourist from Utah, and his family were waiting on a subway platform at Seventh Avenue and 53rd Street. There they encountered Nova and a group of his friends, who had arrived by subway from Queens. Nova and his friends were heading for Roseland, a midtown nightclub. Because some of Nova's friends did not have enough money to pay Roseland's admission fee, they decided to commit a robbery to obtain it. The Watkins family was their target of opportunity. Nova and his friends robbed Brian Watkins's father, beat his mother, and fatally stabbed Brian. They then proceeded to Roseland.

A bystander at the crime scene told the police that the suspects had indicated they were going to Roseland. This witness accompanied the police to the club, where he identified one of the robbers, Anthony Anderson. Anderson was taken to Midtown North Precinct for questioning. There he implicated Nova, described him, and told the police that Nova was still at Roseland.

* The Honorable John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

At 4:00 a.m. the police returned to Roseland and identified a group of teenagers who matched the descriptions provided by Anderson. The police fanned out to stop the suspects from fleeing and then directed them to move towards a wall. There, Nova was patted down and a knife was taken from him. Nova and two other youths were told that they were going to the police station and that they would be free to leave after they had given statements about a robbery that had occurred in the subway. The other members of the group were allowed to leave.

Nova arrived at the Midtown North Precinct station house at approximately 4:45 a.m. and was taken to a "coffee room" on the third floor. Two detectives began questioning him some time before 6:00 a.m. They did not tell him that he was free to leave, and they did not issue a *Miranda* warning to him. He was guarded by the police at all times before and during the questioning, and was not given an opportunity to contact a lawyer, friend, or family member.

During the course of the questioning in the coffee room the police employed several tactics to induce Nova to make statements implicating himself in the crime. After an hour or so of questioning during which Nova maintained his innocence, a dispute about the amount of money Nova was carrying broke out. Nova then said, "All right, I'll tell you the truth. I ain't going to fool around with yous. I'll tell you the honest truth." Nova was then advised of his *Miranda* rights, which he waived.

After receiving his warning, Nova gave a confession which was reduced to writing and signed by Nova. At approximately 7:45 p.m. on September 3, after receiving another *Miranda* warning, he gave a videotaped confession to an Assistant District Attorney.

On December 10, 1991, following a seven-week jury trial in Supreme Court, New York County, during which several of his pre-warning statements and his written and videotaped confessions were admitted into evidence, Nova was convicted of one count of felony murder in the second degree and two counts each of robbery in the first and second degree. His conviction was affirmed by the Appellate Division, *People v. Nova,* 198 A.D.2d 193, 603 N.Y.S.2d 863 (1st Dep't 1993). Leave to appeal to the New York Court of Appeals was denied. *People v. Nova,* 83 N.Y.2d 808, 611 N.Y.S.2d 144, 633 N.E.2d 499 (1994).

On December 5, 1995, Nova filed a timely petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. In his petition, he asserted that he had been unconstitutionally subjected to custodial interrogation prior to receiving his *Miranda* warning and that his later, fully warned confessions should have been suppressed because they were tainted by his illegally obtained statements.

Because a custody determination presents a mixed question of law and fact, a habeas court undertakes an independent review of the record to determine whether the petitioner was in custody. *See Thompson v. Keohane,* 516 U.S. 99, 112–13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). The district court therefore reviewed in detail the circumstances surrounding Nova's questioning at the Midtown North Precinct station house to determine whether a reasonable person in Nova's situation would have felt free to terminate the interrogation and leave, the ultimate "in custody" determination for purposes of *Miranda. See Nova,* 63 F.Supp.2d at 452–58; *see also Thompson,* 516 U.S. at 112, 116 S.Ct. 457.

The district court noted that "[i]f a true reasonable person standard is to be applied, then the courts must recognize [ ] how actual people reasonably behave when encountered by the police." *Nova,* 63 F.Supp.2d at 456. Under that standard, the court recognized that Nova's "perception that he was being detained was rea-

sonable." *Id.* The court decided, however, that it was compelled by the applicable case law, particularly our decision in *United States v. Cota,* 953 F.2d 753, 758–59 (2d Cir.1992), to conclude that for *Miranda* purposes Nova was not in custody.

Although it is difficult to interpret custody in the absence of a practical reasonable person standard, this court must follow precedent on this issue. So although it would appear to the court that a reasonable person in the petitioner's position would not have felt free to leave, the weight of the case law is clear. Precedent dictates that petitioner's circumstances do not amount to those where a reasonable person would not feel free to leave. Thus, adhering to precedent, this court must conclude that petitioner was not in custody for *Miranda* purposes and, therefore, was not entitled to any *Miranda* warnings at any point prior to 7:10 a.m.

*Nova,* 63 F.Supp.2d at 457–58.

After concluding that Nova was not in custody prior to the receipt of his *Miranda* warnings, the district court further held that (1) "petitioner did not make an incriminating statement prior to receiving *Miranda* warnings," and that therefore "even assuming that he was in custody and his pre-*Miranda* statements should have been suppressed, it would amount to harmless error," *Nova,* 63 F.Supp.2d at 458; and (2) "even if petitioner did make an incriminating statement prior to receiving *Miranda* warnings ... the circumstances surrounding petitioner's first, unwarned statement do not rise to the level of coercion necessary to render his later, fully warned statements inadmissible." *Id.*

## DISCUSSION

■ We affirm the judgment of the district court solely on the ground that Nova did not make any inculpatory statements prior to receiving his *Miranda* warning and that his later, post-warning confessions were admissible at trial. We do not reach the difficult question of whether Nova, a teenager without a high school diploma who had little experience with the law, was in custody when he was subjected to questioning by the detectives at the police station. *Cf. Tankleff v. Senkowski,* 135 F.3d 235, 244 (2d Cir.1998) (finding suspect in custody after two hours of questioning at police station and listing factors to be considered in making custody determination).

It is undisputed that Nova gave oral, written and videotaped confessions after having been given *Miranda* warnings. The only arguably incriminating statement made before the warnings were given was, "All right, I'll tell you the truth. I ain't going to fool around with yous. I'll tell you the honest truth." Agreeing to tell the truth, without more, is not an inculpatory or self-incriminating statement. Before Nova could say anything further he was informed of his rights. The only statements made by Nova absent a *Miranda* warning were thus not inculpatory.

■ Moreover, even if Nova's "I will tell the truth" statement was incriminating and obtained in violation of the *Miranda* rule, that does not render his later, fully warned confessions inadmissible. In *Oregon v. Elstad,* 470 U.S. 298, 311–14, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court expressly rejected the "cat out of the bag" theory under which, once an incriminating statement has been made, no subsequent confession can be truly voluntary:

[T]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda,* was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made.... No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled

from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.

*Id.* at 318, 105 S.Ct. 1285 (footnote omitted).

Nova has explicitly told this Court that "[t]here is no independent coercion claim in dispute; this appeal revolves around *Miranda* custody issues." Nor has there been any evidence presented to indicate that the questioning of Nova was coercive or that his statements were otherwise involuntary. His later, fully warned confessions were therefore admissible.

Finally, in light of the fact that Nova made complete, detailed confessions after having been read his rights, the admission of his pre-warning statements, even if inappropriate, would amount to no more than harmless error. *Brecht v. Abrahamson* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (on collateral habeas review, "constitutional error of the trial type" is harmless unless it had "substantial and injurious effect or influence in determining the jury's verdict") (citation and quotation marks omitted); *Campaneria v. Reid,* 891 F.2d 1014, 1022 (2d Cir.1989)(admission of statement given in violation of *Miranda* harmless error where statement is cumulative of properly admitted evidence).

## CONCLUSION

Nova gave two extensive confessions after voluntarily waiving his *Miranda* rights, and those confessions were admissible at trial. The admission of any pre-warning statements was at most harmless error. We therefore affirm the judgment of the district court without deciding whether Nova was in custody, and therefore entitled to *Miranda* warnings, prior to 7:10 a.m. on September 3, 1990.