**Charles DAVIS, Petitioner,**

v.

**Sally B. JOHNSON, Superintendent, Orleans Correctional Facility, Respondent.**

**No. 00–CV–1010(ADS).**

United States District Court, E.D. New York.

April 14, 2003.

Charles Davis, Beacon, NY, for Petition-
er, pro se.

Denis Dillon, District Attorney of Nassau County, Tammy Smiley and Andrea Di Gregorio by Assistant District Attorneys, Mineola, NY, for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Charles Davis ("Davis") petitions for a writ of habeas corpus with regard to his 1996 conviction in state court, pursuant to 28 U.S.C. § 2254. For the reasons stated below, Davis's petition is denied.

On April 12, 1995, Davis shot Detective James Curtis, in the back of his head, near a warehouse in Oceanside, Nassau County, New York. At approximately three o'clock that morning, Davis was driving to his job at a newspaper warehouse. Davis had his vehicle's high beam lights. Detective Curtis, who was off-duty at the time, signaled for Davis to pull over. Davis stopped, and Detective Curtis drove along side his car, telling him to get his lights fixed. Davis agreed, then drove off. Detective Curtis followed Davis. He again pulled his vehicle along side Davis's and identified himself as a police officer. Detective Curtis was wearing street clothes at the time, and was not driving a patrol car. Davis did not stop, but continued to his job at the warehouse.

Shortly thereafter, both men arrived at the warehouse and left their respective vehicles. Detective Curtis drew his gun, asked Davis for identification and told him to get on the ground. Davis contends that Detective Curtis was drunk and yelled racial epithets at him. Initially, Davis laid on the ground. Several of Davis's co-workers came out of the building and told Detective Curtis that Davis worked there. Davis told his co-workers to call 911. Then Davis stood up and asked Detective Curtis, "why are you doing this?" (T.R. of 1/24/96, at 156). Davis then grabbed Detective Curtis's gun, pointed it at his face and asked, "how do you like it? How does it feel?" (*Id.*). Detective Curtis ran towards the door at the rear of the warehouse. Davis chased him and tried to shoot him, but the gun did not fire. Davis yelled at Detective Curtis to stop, and he did inside the doorway of the warehouse. On Davis's orders, Detective Curtis got on the ground. Davis struck him on the side of the head with the gun. Then Davis cocked the gun and shot Detective Curtis in the back of the head. Although Detective Curtis survived the shooting, he is severely handicapped, nearly blind and his memory is grossly impaired.

Davis initially put the gun inside a dumpster near the warehouse, but then he brought it inside and placed it on a table. Shortly thereafter, the police arrived. At some point in time, the police took Davis to headquarters and placed him in an interview room. Davis gave oral and written statements about the events that occurred, both before and after signing a *Miranda* warnings card.

On September 27, 1996, after a jury trial in County Court, Nassau County (Calabrese, J.), Davis was convicted of Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00, 125.25(1)), Attempted Manslaughter in the First Degree (N.Y. Penal Law §§ 110.00, 125.20(2)), Criminal Use of A Firearm in the First Degree (N.Y. Penal Law § 265.09(1)), Assault in the First Degree (N.Y. Penal Law § 120.10(1)), Criminal Possession of A Weapon in the Second Degree (N.Y. Penal Law § 265.03), and Criminal Possession of A Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)).

On November 19, 1996, Judge Calabrese sentenced Davis to concurrent prison terms of: (1) seven to twenty-one years for the attempted murder and firearm convictions; (2) four to twelve years for the attempted manslaughter, assault, and sec-

ond degree weapon possession convictions; and (3) two to six years for the third degree weapon possession conviction.

In July 1998, Davis directly appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), alleging that: (1) trial counsel was ineffective for failing to timely notify the prosecution about psychiatric evidence, thus precluding its entry into evidence; (2) the trial court erred in its decision not to suppress his statements, because he gave them under unconstitutional duress; (3) the trial court improperly curtailed the cross-examination of a prosecution witness; (4) the evidence was insufficient to support the verdict and the prosecution did not prove its case beyond a reasonable doubt; and (5) his sentence was harsh and excessive.

On February 8, 1999, the Appellate Division affirmed Davis's conviction, finding that: (1) the trial court did not err in admitting his statements because there was no evidence of duress; (2) the evidence was legally sufficient to establish his guilt beyond a reasonable doubt; (3) the trial court did not err in limiting the cross-examination of a prosecution witness; (4) his sentence was not excessive and (5) his remaining contentions were without merit. *People v. Davis*, 258 A.D.2d 528, 685 N.Y.S.2d 455, 456 (2d Dep't 1999). On March 19, 1999, the New York Court of Appeals denied Davis leave to appeal. *People v. Davis*, 93 N.Y.2d 872, 689 N.Y.S.2d 434, 711 N.E.2d 648 (1999).

In December 1998, while his direct appeal was pending, Davis moved to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law Section 440. He alleged that: (1) the prosecutor committed misconduct by instructing the police officers what to write in his statement, and by presenting false exhibits against him; (2) newly discovered impeachment evidence would have discred-

ited witnesses and changed the outcome of the suppression hearing; (3) counsel provided ineffective assistance; and (4) his conviction was obtained in violation of the federal constitution. In an order dated February 18, 1998, Judge Calabrese denied the motion on procedural grounds, finding that the issues were previously litigated on appeal and found to be without merit.

On February 15, 2000, Davis filed the instant petition for a writ of habeas corpus, alleging the same grounds as in his direct appeal, namely: (1) trial counsel was ineffective for failing to timely notify the prosecution about psychiatric evidence, thus precluding its entry into evidence; (2) the trial court erred in its decision not to suppress his statements, because he gave the statement under unconstitutional duress; (3) the trial court improperly curtailed the cross-examination of a prosecution witness; (4) the evidence was insufficient to support the verdict and the prosecution did not prove its case beyond a reasonable doubt; and (5) his sentence was harsh and excessive.

On November 3, 2000, Davis filed a "Traverse," or supplemental memorandum, in this Court which raised five new grounds: (6) trial counsel was ineffective for failing to "adequately address Detective Curtis' outrageous police misconduct"; (7) the trial court erred in failing to suppress evidence obtained as a result of Detective Curtis's conduct; (8) the trial court erred in allowing the jury to determine whether Detective Curtis committed police misconduct, and the indictment should be dismissed because of this alleged error; (9) the indictment should be dismissed because Detective Curtis committed "outrageous police misconduct"; and (10) the trial court's exercise of jurisdiction violated

his due process rights. (Traverse of 11/3/00).

In a letter dated November 21, 2000, the Nassau County District Attorney, answering for Respondent, argued that the Court should reject the claims raised in Davis's Traverse because he did not include them in his original petition or in a motion to amend the petition.

On November 29, 2000, Davis wrote to the Court asking permission to withdraw the "additional" claims (those raised in his traverse), and to stay his original petition while he pursued the additional claims in state court.

On February 7, 2001, Davis filed a second Section 440 motion, alleging: (1) "his sentence process was unfair because his trial attorney's entire performance was ineffective"; (2) his presentence report contained materially untrue assumptions and misinformation; (3) his sentence constituted cruel and unusual punishment; and (4) in imposing restitution, the sentencing court failed to set forth the manner in which restitution was to be paid and failed to consider his ability to pay any restitution. On April 17, 2001, Judge Calabrese denied his motion, finding that the record contradicted his arguments and the court previously reviewed his sentence issue in his direct appeal.

Davis filed a third Section 440 motion on October 5, 2001, claiming that: (1) trial counsel was ineffective for failing to: (i) file an adequate cross-complaint against Detective Curtis; (ii) move to dismiss the indictment; (iii) challenge the constitutionality of Detective Curtis's conduct prior to trial; (2) the prosecution interfered with his ability to challenge the constitutionality of Detective Curtis's actions prior to trial; (3) the trial court erred in allowing the jury to determine the legality of Detective Curtis's alleged misconduct; (4) state and federal due process requires that the indictment should be dismissed because of

Detective Curtis's alleged misconduct; (5) the trial court did not have jurisdiction over him because of Detective Curtis's alleged unconstitutional acts; and (6) the court should vacate his judgment because of newly discovered evidence. By order dated November 16, 2001, Judge Calabrese denied his motion on procedural grounds. The court stated that Davis "although able to do so, failed to raise the claims herein either on his direct appeal or in his prior applications to this [c]ourt." (Order of County Court, Nassau County (Calabrese, J.), of 11/16/01, at 1).

On January 25, 2002, Davis filed an application for a writ of error coram nobis in state court, alleging that appellate counsel was ineffective for failing to: (1) claim that trial counsel was ineffective for failing to: (i) move to dismiss the indictment based on alleged police misconduct; (ii) move to dismiss multiple counts in the indictment; (iii) allow him to be sentenced on the basis of untrue assumptions; (iv) argue that the trial court did not have jurisdiction over Davis; and (v) argue that the jury should not decide whether Davis is not guilty because of Detective Curtis's alleged misconduct.

On May 20, 2002, the Appellate Division denied his application, finding that he "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Davis*, 294 A.D.2d 513, 742 N.Y.S.2d 863 (2d Dep't 2002).

The Court has not received any additional submissions or requests from either of the parties. Although Davis had requested a stay of his petition in his November 2000 letter, he subsequently returned to state court and exhausted the additional claims submitted in his traverse. Thus, the Court finds no reason to stay his petition. The Court will permit him to include the additional claims, and address them below.

## DISCUSSION

Davis filed this action after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. *Williams v. Taylor,* 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Under the provisions of Section 2254(d), a habeas corpus application must be denied unless the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). A decision is "contrary to" established Federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.*

### A. As to the Ineffective Assistance of Counsel Claim

Davis argues that his trial counsel was ineffective for failing to timely notify the prosecution that he intended to present psychiatric evidence, as required by New York State Criminal Procedure Law Section 250.10. Consequently, the trial court precluded defense counsel from calling a psychiatrist to testify. Davis contends that this alleged error caused his defense to fail.

In order to prevail on an ineffective assistance of counsel claim, a petitioner must first show that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. However, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that the federal district courts need not address both components if a petitioner fails to establish either one. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

■ New York Criminal Procedure Law Section 250.10 provides that a defendant who intended to present psychiatric evidence must notify the prosecution of this intent within thirty days after the entry of the defendant's plea. If the defendant does not do so, the court may bar the psychiatric evidence. "In the interests of justice and for good cause shown, however, the court may permit such service and

filing to be made at any later time prior to the close of the evidence." N.Y.Crim. Proc. Law § 250.10.

Davis argues that his trial counsel, Frederick Brewington ("Mr.Brewington"), was ineffective for failing to timely present notes from Dr. Dudley, the defense psychiatric witness, to the prosecution. This would have been difficult because Mr. Brewington did not have Dr. Dudley's notes until sometime after Davis's trial began. However, Mr. Brewington did place Dr. Dudley's name on a witness list that he gave to the prosecution months before the start of Davis's trial. Further, Mr. Brewington argued strenuously as to why the trial court should permit the evidence. He argued that Dr. Dudley's notes were not subject to Section 250's requirements because they did not concern a "mental disease or defect." (T.R. of 9/16/96, at 760–67). In the Court's view, Mr. Brewington's conduct was diligent and reasonable, and Davis has not provided any evidence to the contrary.

■ In any event, Davis has not demonstrated that he suffered prejudice as a result of Mr. Brewington's representation. Even if Mr. Brewington had filed the requisite notice under Section 250, Dr. Dudley's testimony may not have convinced the jury that Davis qualified for a justification defense. The jury heard other evidence regarding Davis's state of mind, which is primarily what Dr. Dudley's testimony would have been, yet the jury did not find that Davis's actions were justifiable. Davis has failed to show that the outcome of his trial would have been different but for counsel's alleged error. *See Gonzalez v. Travis*, 172 F.Supp.2d 448, 455–56 (S.D.N.Y.2001). Accordingly, Davis's ineffective assistance of counsel claim is denied.

## B. As to the Alleged Involuntary Statements

■ Davis contends that the trial court should have suppressed his oral and written statements because the police did not properly give *Miranda* warnings and he did not voluntarily waive them.

■ The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); *see also Nova v. Bartlett*, 211 F.3d 705, 707 (2d Cir.2000); *Mincey v. Arizona*, 437 U.S. 385, 396, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]nstead, the Court is under a duty to make an independent evaluation of the record").

Factual questions underlying a legal determination, however, are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Nelson*, 121 F.3d at 834. Davis bears the burden of rebutting this presumption by clear and convincing evidence. *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir.2001) (citing 28 U.S.C. § 2254(e)(1)).

The hearing court made the following factual findings, and concluded that Davis waived his *Miranda* rights and gave a voluntary confession without police coercion:

At approximately 3:30 a.m. on April 12, 1995, Sgt. John Kelly and Officer Thomas Barbieri of the Nassau County Police Department ("NCPD") separately responded to 1800 Access Road, Oceanside, Nassau County, New York as the result of a police radio bulletin announcing that a man with a gun in the rear of the building, and which was followed by

a second police report of a man shot at that location. This building is a newspaper distribution center.

Upon their arrival, civilians outside the building indicated to the officers that a man with a gun was inside.

With guns drawn, Kelly and Barbieri entered into an office area which overlooked the warehouse section of the building. At that time they saw Defendant with a pistol in his hand and told him to put it down.

Defendant complied, the officers stepped into the warehouse and placed Defendant under arrest. As he was being handcuffed Defendant volunteered, "He [Curtis] said he was a cop but I didn't believe him. He showed me a badge but I didn't believe him because of the way he was dressed and the car he was driving. He said don't move nigger or I'll blow your head off. I shot him, it was an accident."

The officers found Curtis, who had been shot in the head, just a few feet away, "crumpled into a heap."

Defendant was first transported to the 4th Precinct and then to the Homicide Squad at Police Headquarters, Mineola. At 6:05 a.m. he was interviewed by NCPD Det. Brian Parpan. Prior to the interview, Defendant was read his Miranda warnings from a card. Defendant then read the card; indicated he understood his rights; signed the card to signify the same and stated that he would speak to Parpan. Defendant then gave a narrative account of his version of the events and agreed to have it reduced to a writing, which he signed (People.Ex.3). This written statement was completed at 8:35 a.m. Defendant also drew a sketch of the scene (People.Ex.4).

Subsequent to the aforestated events, Parpan was advised that an attorney had just called and advised that the police were not to "speak" with Defendant.

At approximately 9:30 p.m., Defendant was transferred to the custody of the Nassau County Correctional Facility and placed in the medical unit for routine admittance procedures. Defendant was crying and visibly upset and in his grief started to talk to Nassau County Correction Officer Gary Fish about the incident. He stated he had his bright lights on as he was driving. Correction Supervisor John Cassidy, who was also present in the medical unit, overheard Defendant and interjected, "Why did you have the brights on?" Defendant then vocalized the entire chain of events leading to the shooting. This was memorialized by Fish in a report (Peo. Ex.5). The Court finds that in light of Defendant's initial spontaneous statement he would have given a full narrative, regardless of whether Cassidy had asked about the "brights" or not.

There is not evidence that Defendant had been physically abused by personnel at the jail.

(Order of County Court, Nassau County (Calabrese, J.) of 4/3/96, at 2–4).

After reviewing the record and the totality of the circumstances, the Court concludes that Davis received proper *Miranda* warnings and he made a voluntary waiver before giving his statements. Davis has presented no evidence that the police coerced his statement, and the record refutes his contention. Davis has not met the burden of overcoming the presumption that attaches to factual findings by the trial court on this issue. *See United States v. Gaines,* 295 F.3d 293, 297–99 (2d Cir.2002); *Key v. Artuz,* No. 99–CV–161JG, 2002 WL 31102627 at *5–7 (E.D.N.Y. Sept. 16, 2002). Thus, Davis's claim is without merit.

To the extent that Davis raises a Fourth Amendment claim intertwined with his Fifth Amendment claim, it is not cognizable for federal habeas corpus relief. *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *see also Graham v. Costello*, 299 F.3d 129, 131 (2d Cir.2002); *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir.1991). Davis argued his Fourth Amendment claim before the trial court in a pre-trial hearing. The trial court denied his motion to suppress and both the Second Department and the New York State Court of Appeals upheld that decision. Thus, Davis had a "full and fair" opportunity at the state level to litigate his Fourth Amendment claims. Accordingly, Davis's claim of alleged involuntary statements and related issues are denied.

### C. As to the Alleged Trial Court Error

Davis argues that the trial court improperly curtailed the cross-examination of prosecution witness Phillip Stravino ("Stravino"). Specifically, he contends that the trial court should have allowed defense counsel to inquire from Stravino, Detective Curtis's long-time friend, whether Stravino had ever heard Detective Curtis utter racial slurs.

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir.1994) (citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). "This right,

however, may be subject to limitations imposed by the trial court. Indeed, 'trial court judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination.'" *Lugo v. Edwards*, 1998 WL 601080, at *2 (S.D.N.Y. Sept.9, 1998) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Provided that " 'the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility,' cross-examination is not improperly curtailed." *Lugo*, 1998 WL 601080, at *2 (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 806 (2d Cir.1990)).

The Second Department found:

the trial court did not err in limiting cross-examination of one of the People's witnesses regarding the victim's alleged racial bigotry. It is well settled that the scope of cross-examination rests largely in the sound discretion of the court, which here correctly found that the claims regarding the victim's alleged racial bigotry did not in any way mitigate the defendant's conduct (*see, Matter of Devanand S.*, 188 A.D.2d 533, 591 N.Y.S.2d 440).

*Davis*, 258 A.D.2d at 528–29, 685 N.Y.S.2d 455.

It was within the trial court's discretion to sustain objections to questions regarding Detective Curtis's use of racial slurs on occasions other than the event in question. *See United States v. Perez*, No. 01 Cr. 848, 2003 WL 721568, at *6–7 (S.D.N.Y. Feb. 28, 2003); *Rosario v. Attorney Gen. of N.Y.*, No. 00 CIV 6681, 2001 WL 267641, at

*10–11 (S.D.N.Y. Mar. 19, 2001) ("Any limitation on cross-examination was within the trial court's discretion."). Defense counsel had a full and fair opportunity to cross-examine Stravino about topics discussed in his direct testimony, including Detective Curtis's state of mind and demeanor on April 12, 1995. The trial court permitted questions about the type and amount of alcoholic beverages Detective Curtis consumed, and how he reacted to losing the dart match he played. (*See* T.R. of 9/10/96, at 424–63). Thus, the state courts' findings are not an unreasonable application of federal constitutional law. *See Gonzalez v. Bennett*, No. 00 CIV. 8401, 2001 WL 1537553, at *6 (S.D.N.Y. Nov. 30, 2001); *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431 (a trial judge may impose limits on defense counsel's inquiry "based on concerns about, among other things … prejudice, confusion of the issues … or interrogation that is repetitive or only marginally relevant"). Accordingly, Davis's claim concerning improper restrictions on cross-examination is denied.

### D. As to the Insufficient Evidence Claim

Davis alleges that the evidence did not support his attempted murder conviction.

■ A petitioner who challenges the sufficiency of the evidence supporting his conviction "bears a heavy burden." *United States v. Griffith*, 284 F.3d 338, 348 (2d Cir.2002) (citing *United States v. Velasquez*, 271 F.3d 364, 370 (2d Cir.2001)). To obtain habeas corpus relief, the Court must find that, when viewing the evidence most favorably to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt. *Farrington v. Senkowski*, 214 F.3d 237, 240–41 (2d Cir.2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ In addition, the Court must defer to the jury's determination of the weight given to conflicting evidence, witness credibility, and inferences drawn from the evidence. *United States v. Vasquez*, 267 F.3d 79, 90–91 (2d Cir.2001) (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir.1998); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). A guilty verdict may not be disturbed if the jury has resolved these issues in a reasonable manner. *See id.* The Court's "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993) (emphasis in original).

■ Applying the above standard, the Court finds that the evidence amply supports Davis's attempted murder and other convictions. By his own admission, Davis took Detective Curtis's gun from him, struck him on the side of the head with his gun, tried to shoot him once unsuccessfully, and then did in fact shoot him in the back of his head. Before firing the second bullet, Davis recognized that the gun did not fire because the bullet was not positioned correctly in the gun chamber. Davis purposely cocked the gun to bring the bullet to firing position, then shot Detective Curtis at close range. Even if Detective Curtis's conduct was less than exemplary, a jury could reasonably find that Davis's actions were not justified. Further, when viewing the totality of the evidence presented, the jury could reasonably conclude that Davis attempted to kill Detective Curtis. *See Flores v. Greiner*, No. 97 CV 5671, 2000 WL 1052054, at *5–6 (E.D.N.Y. June 19, 2000) (finding ample evidence to support jury verdict that petitioner attempted to murder police officer). Davis has not demonstrated that the Court should disturb the jury's verdict, or that the state courts' decision was an unreason-

able application of federal law. Accordingly, Davis's insufficient evidence claim is denied.

### E. As to the Alleged Excessive Sentence

Davis argues that the trial court imposed a harsh and excessive sentence, especially in light of Detective Curtis's alleged misconduct.

■ It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *Dorsey v. Irvin*, 56 F.3d 425, 427 (2d Cir.1995); *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992). " 'No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law.' " *Ross v. Gavin*, 101 F.3d 687 (2d Cir.1996) (quoting *White*, 969 F.2d at 1383); *see Gonzalez v. Travis*, 172 F.Supp.2d 448, 457 (S.D.N.Y.2001) (finding an excessive sentence claim is not cognizable for habeas review where the sentence was within statutory range); *Herrera v. Artuz*, 171 F.Supp.2d 146, 151 (S.D.N.Y. 2001) (holding that the trial court's imposition of consecutive sentences was appropriate and did not provide ground for habeas relief); *McCalvin v. Senkowski*, 160 F.Supp.2d 586, 589 ("Sentencing decisions are not cognizable on habeas review unless the sentence imposed falls outside the range prescribed by state law."); *Thomas v. Senkowski*, 968 F.Supp. 953, 956–57 (E.D.N.Y.1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law).

Upon his conviction for attempted second degree murder, attempted first degree manslaughter, first degree criminal use of a firearm, first degree assault, second degree criminal possession of a weapon, and third degree criminal possession of a weapon, the court sentenced Davis to concurrent prison terms of: (1) seven to twenty-one years for the attempted murder and firearm convictions; (2) four to twelve years for the attempted manslaughter, assault, and second degree weapon possession convictions; and (3) two to six years for the third degree weapon possession conviction. Davis's sentence fell within the guidelines prescribed by state law. N.Y. Penal Law §§ 70.02; *see also People v. Ruiz*, 291 A.D.2d 418, 419, 738 N.Y.S.2d 59, 60 (2d Dep't 2002); *People v. Suitte*, 90 A.D.2d 80, 83–88, 455 N.Y.S.2d 675, 678–81 (2d Dep't 1982). Thus, his claim is not cognizable for federal habeas corpus review. Accordingly, the sentencing claim is dismissed.

### F. As to Davis's Additional Claims

■ Federal courts are precluded from reviewing a habeas corpus claim when a state court judgment rests on an adequate and independent state ground, including a state procedural bar. *Cox v. Miller*, 296 F.3d 89, 100 (2d Cir.2002); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred."). The state court must explicitly state that it is relying on a state procedural bar in order to foreclose federal habeas review. *Jones v. Stinson*, 229 F.3d 112, 117–18 (2d Cir. 2000).

Regarding Davis's additional claims, Grounds Six through Ten, the state court specifically found that they were procedurally barred. (*See* Order of County Court, Nassau County (Calabrese, J.), of 11/16/01, at 1). Thus, the state court's denial of these claims rested on a state procedural ground. *See Rodriguez v. Walsh*, No. 00–

CV–663, 2002 WL 1447483, at *2 (E.D.N.Y. July 2, 2002).

 It is not clear whether Davis appealed that denial to the Appellate Division. In any event, in order for the Court to review these claims, Davis would have to show "cause for the default and actual prejudice" or a "fundamental miscarriage of justice" as explained above. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546 (1991). Davis has not set forth any cause, actual prejudice, or a miscarriage of justice necessary to overcome the procedural bar. Accordingly, Grounds Six, Seven, Eight, Nine and Ten are dismissed.

## CONCLUSION

For the foregoing reasons, Davis's petition for a writ of habeas corpus is DENIED.

Pursuant to Fed. R.App. P. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as Davis has not made a substantial showing of a denial of a constitutional right. *Miller–El v. Cockrell,* 123 U.S. 1029, ——, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

SO ORDERED.