**Richard WHITLATCH, Petitioner,**

v.

**Daniel A. SENKOWSKI, Superintendent, Respondent.**

No. 02–CV–6524L.

United States District Court, W.D. New York.

Nov. 17, 2004.

---

Richard Whitlatch, Dannemora, NY, for Plaintiff.

Loretta S. Courtney, Esq., Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Richard Whitlatch ("Whitlatch") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on two counts of murder in the second degree (felony murder) and one count each of burglary in the first degree and robbery in the second degree. For the reasons set forth below, the petition is denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 6, 1999, at about 6 p.m., members of the Irondequoit Police Department responded to the home of eighty-eight-year-old Gerald Bonfiglio ("Bonfiglio") after he activated a "Life–Line" emergency communication device. Bonfiglio was found lying on the floor of his kitchen near a chair that had been pushed off to the side away from the kitchen table. Although Bonfiglio's breathing was extremely labored, the police were able to under-

stand from Bonfiglio that a thin, blond man who previously had done yard work for him had come to the door asking for bus fare. Bonfiglio gave the man a dollar, but the man demanded another quarter. Although Bonfiglio initially refused, he started to reach into his pocket for more change. Bonfligio told the officers, "[T]hat's when he knocked me down." According to Bonfiglio, the man put his arm around Bonfiglio's neck, knocked him into some kitchen chairs and then to the floor, and took the wallet out of Bonfiglio's shirt pocket. Bonfiglio did not know the man's name but recognized him as someone whom a man named "Dave" had brought to his house a week earlier to help with yard work. Bonfiglio died in the hospital, two days after the assault, on August 8, 1999, as a result of an irregular heart rhythm that the prosecution later argued was precipitated by the events that occurred during the burglary.

When the police initially contacted "Dave", they determined that his full name was David Cordilione ("Cordilione"). Even though Cordilione was not a suspect, the police nevertheless advised him of his *Miranda* rights; Cordilione agreed to speak with them. Cordilione admitted that he had done yard work for Bonfiglio and that he had brought another person over to help with the work on two occasions. Cordilione identified this man as "Richie Burns" and described him as a twenty-five-year-old white male, with shoulder-length blonde hair and a thin build.

Meanwhile, Whitlatch had been identified by a woman named Ellen Skuse after she looked at a photo array. Skuse, who previously had purchased drugs from Whitlatch, identified Whitlatch as "Jim" and stated that he lived at 8 Archer Street and spent a lot of time with Cordilione. The police went to 8 Archer Street where they found Whitlatch and his father. At that time, they picked Whitlatch up on an outstanding parole violation and brought him to the Monroe County Jail. The police then enlisted Robert Reynolds ("Reynolds"), a housemate and acquaintance of Whitlatch's, to help them with their investigation. Reynolds agreed to go into Whitlatch's cell wearing a wire and engage Whitlatch in conversation about the Bonfiglio burglary/homicide.

During his conversation with Reynolds, Whitlatch allegedly stated that he would not speak with the police unless Cordilione confessed his involvement in the incident. The police subsequently prepared a "confession" by Cordilione to show to Whitlatch. When the police went to interview Whitlatch, they advised him of his *Miranda* rights which he agreed to waive. During the interrogation, they presented the phony "confession" to Whitlatch and, shortly thereafter, he orally admitted his involvement in the Bonfiglio incident.

According to Whitlatch, he met Cordilione through Reynolds, his housemate at 8 Archer Street. Whitlatch did some yard work with Cordilione for a man named "Jerry" (*i.e.*, Bonfiglio) in Irondequoit in order to get money to support their crack cocaine habit. One day, after they had run out of crack cocaine, Cordilione suggested robbing Bonfiglio to get more drug money. Cordilione told Whitlatch that Whitlatch had to be the one to go into Bonfiglio's house because Bonfiglio did not know Whitlatch's name. Cordilione and Whitlatch drove to Bonfiglio's house; Whitlatch walked up to the house while Cordilione waited in the car. According to Whitlatch, Bonfiglio let him into the house. Whitlatch then asked Bonfiglio for bus fare. Bonfiglio gave him a dollar, but Whitlatch asked for more. As Bonfiglio was retrieving his wallet, Whitlatch grabbed it out of Bonfiglio's hand and ran out the door. Whitlatch denied having any physical con-

tact with Bonfiglio and said that he used no force in taking the wallet. These oral admissions subsequently were reduced to a signed written statement.[1]

A bench trial was held in Monroe County Court (Connell, J.). Whitlatch was found guilty on all counts of the indictment. He was sentenced as a second felony offender to concurrent terms of imprisonment, the longest of which was 25 years to life.

Through counsel, Whitlatch appealed his conviction. Whitlatch also filed a *pro se* supplemental brief. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on May 3, 2002. *People v. Whitlatch*, 294 A.D.2d 909, 742 N.Y.S.2d 752 (4th Dept.2002). The New York State Court of Appeals denied leave to appeal on July 30, 2002. *People v. Whitlatch*, 98 N.Y.2d 703, 747 N.Y.S.2d 422, 776 N.E.2d 11 (2002).

■ This federal habeas petition followed. Respondent contends that certain of Whitlatch's claims are not exhausted because defense counsel did not specifically mention those issues in the leave application letter to the New York Court of Appeals. In response to this assertion, Whitlatch submitted to this Court his *pro se* letter to the New York Court of Appeals in which he requested leave to appeal all of the issues raised in appellate counsel's brief, as well as the issues raised in his *pro se* supplemental brief. *See* Petitioner's Reply Affirmation and Memorandum of Law, Exhibit A (Docket # 9). By doing so, Whitlatch fairly presented all of his claims to the highest state court from which a decision may be had. Accordingly, I conclude that all of the claims in the instant habeas petition are fully exhausted and properly before this Court on habeas review. *See* 28 U.S.C. § 2254(b)(1); *Bos-*

*sett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

## DISCUSSION

### *Standard of Review*

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### *Merits of the Petition*

#### I. Failure to suppress statement to police

■ The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); *see also Nova v. Bartlett*, 211 F.3d 705, 707 (2d Cir.2000). However, factual questions underlying a legal determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). The habeas petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.; see also McKinney v. Artuz*, 326 F.3d 87, 101 (2d Cir.2003). "The statutory presumption refers to historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Green v. Scully*, 850 F.2d 894,

---

1. Cordilione pleaded guilty and received a    ten-year determinate sentence.

900 (2d Cir.1988) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). The Second Circuit has explained that this presumption of correctness is "particularly important" when reviewing the trial court's assessment of witness credibility. *Parsad v. Greiner,* 337 F.3d 175, 181 (2d Cir.) (citing *Cotto v. Herbert,* 331 F.3d 217, 233–34 (2d Cir.2003); *Miller–El v. Cockrell,* 537 U.S. 322, 339–40, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)), *cert. denied,* 540 U.S. 1091, 124 S.Ct. 962, 157 L.Ed.2d 798 (2003).

Without a doubt, the police used a deceptive tactic to induce Whitlatch to give a statement when they falsely led him to believe that his co-defendant, Cordilione, had signed a confession. " 'Trickery, deceit, even impersonation do not render a confession inadmissible, certainly in non-custodial situations and usually in custodial ones as well, unless government agents make threats or promises.' " *United States v. Crawford,* 372 F.3d 1048, 1060–61 (9th Cir.2004) (quoting *United States v. Kontny,* 238 F.3d 815, 817 (7th Cir.2001)) (in turn citing *Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)). As the First Circuit has noted,

> trickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect. While the line between ruse and coercion is sometimes blurred, confessions procured by deceits have been held voluntary in a number of situations.

*United States v. Byram,* 145 F.3d 405, 408 (1st Cir.1998); *see also United States v. Orso,* 266 F.3d 1030, 1039 (9th Cir.2001) (*en banc* ) (holding that an investigator's misrepresentation that a piece of evidence existed, while reprehensible, does not constitute coercive conduct); *Clanton v. Cooper,* 129 F.3d 1147, 1158 (10th Cir.1997)

(holding that a confession was voluntary despite the fact that an officer falsely told the defendant that physical evidence connected him to the crime); *McNeal v. Rdo,* 1988 WL 108440, at *4 (S.D.N.Y. Oct. 6, 1988) (holding that petitioner was not improperly induced to confess by police officer's attempt to convince him that the polygraph machine was infallible), *cert. denied,* 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). Whitlatch himself concedes that "[t]rickery without more does not make a confession inadmissible[.]" He argues, however, that because the police deception in this case was accompanied by a promise of leniency, his confession was rendered involuntary.

■ At the suppression hearing, Whitlatch testified that Investigator Soprano promised him that he would be returned to the drug treatment center and not charged with any crime if he cooperated in the police investigation. According to Whitlatch, it was only after this promise was made that Whitlatch waived his Fifth Amendment rights and agreed to give a statement. Not surprisingly, Investigator Soprano testified that no such assurances were made to Whitlatch. Following the hearing, the trial court made the following findings of fact:

> When Whitlatch was interviewed by Invs. Soprano and Rosenbaum, they properly advised him of his *Miranda* warnings, which he understood and he made [*sic* ] a knowing, voluntary and intelligent waiver of those warnings [*sic* ]. There was nothing coercive about the way the interview took place and *this Court has found that no promises were made to induce the defendant to speak with the investigators.*

8/02/00 Amended Decision & Order (Connell, J.) at 12, Respondent's Appendix at 158 (emphasis supplied).

■ As is usually the case, there were two sides to the story. After weighing the pertinent testimony, the court that heard Whitlatch's suppression motion came down on the prosecution's side. The determination of witness credibility is a factual determination the correctness of which is presumed pursuant to 28 U.S.C. § 2254(e)(1). *See Green v. Scully*, 850 F.2d at 900. Likewise, the question of whether the police engaged in the coercive tactic alleged by Whitlatch, *i.e.*, the promise of being returned to the drug treatment center, is a factual question entitled to the presumption of correctness. *See Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997) (citing *Miller v. Fenton*, 474 U.S. 104, 112, 117, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) ("[S]ubsidiary questions, such as the length and circumstances of [an] interrogation," or whether "the police engaged in the intimidation tactics alleged by the defendant," are entitled to the presumption of correctness.)). Apart from his own assertion that the police officer assured him that he would be returned to the drug treatment center and not charged if he cooperated in the investigation, Whitlatch has offered nothing to rebut the presumption of correctness that I must accord the state court's factual finding that the police officer testified credibly that no such promise was made. Therefore, Whitlatch's claim that his confession was not voluntarily made affords no basis for habeas relief.

## II. Insufficiency of the evidence

■ Whitlatch contends that the evidence was legally insufficient to prove that he caused Bonfiglio's death. At trial, the prosecution presented extensive medical evidence concerning the cause of Bonfiglio's death. In particular, the Deputy Medical Examiner testified that in his opinion, to a reasonable degree of medical certainty, Whitlatch's actions during the course of the burglary caused the irregular heart rhythm that was the immediate cause of Bonfiglio's death. According to Whitlatch, the medical evidence at best established a mere probability that the fatal, irregular heart rhythm was precipitated by Whitlatch's conduct.

On direct appeal, the Fourth Department concluded that

the evidence is legally sufficient to establish that defendant's actions were "an actual contributory cause" of the victim's death. The evidence establishes that defendant came to the home of the 88–year–old victim and asked for bus fare. The victim invited defendant into his home and, when he turned away from defendant to retrieve some change, defendant pushed him to the floor and stole his wallet from his shirt pocket. The victim died in the hospital 40 hours later. The Deputy Medical Examiner who performed the autopsy testified at trial that the victim had two broken ribs on his right side, with significant bruising and swelling in the interior chest cavity on that side. The Deputy Medical Examiner opined that, although the victim suffered from severe heart and lung disease, among other ailments, the cause of death was "an abnormal heart rhythm which developed in the context of severe heart and lung disease which was precipitated by recent rib fractures." Here, "the medical evidence ... supported the fact-finder['s] determination[ ] that defendant ['s] acts were at least a contributing cause of" the victim's death. Rather than being a "merely probable connection between an assault and [a] death," defendant's actions "forged a link in the chain of causes which actually brought about the death."

*People v. Whitlatch*, 294 A.D.2d at 909, 742 N.Y.S.2d 752 (citations omitted; alterations and ellipsis in original).

On federal habeas review, the Court's task is narrowly circumscribed: it is limited to determining whether, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *accord Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002). Thus, a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d Cir.1997). On habeas review, the court is not permitted to " 'make its own subjective determination of guilt or innocence.' " *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

The habeas petitioner must "rebut ... the presumption that all factual determinations made by the state court were correct." *Ponnapula v. Spitzer,* 297 F.3d 172, 176 (2d Cir.2002); *see also* 28 U.S.C. § 2254(e)(1). In making this assessment, the reviewing court may not "disturb the jury's findings with respect to the witnesses' credibility." *United States v. Roman,* 870 F.2d 65, 71 (2d Cir.1989). Thus, under this rigorous standard, a federal habeas court " 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir.1994) (quoting *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781).

In this case, to be sure, the eighty-eight-year-old Bonfiglio's health was precarious: he suffered from poor circulation, long-standing and severe heart disease, scarring of the lungs, and osteoporosis, among other ailments. The medical examiner agreed that Bonfiglio could have suffered a similarly fatal heart dysrhythmia while sitting at home, in the absence of any sort of stressful event. However, the doctor observed, until the robbery and assault occurred, Bonfiglio lived independently in his home with only the help of a part-time aide—despite all of his health problems. Furthermore, I note that the defense presented no medical evidence to rebut the evidence presented on this issue by the People.

In the end, the fact-finder here credited the Deputy Medical Examiner's conclusion, to a reasonable degree of medical certainty, that there was a causal connection between the broken ribs suffered by Bonfiglio when he was pushed to the floor and the fatal irregular heartbeat that killed him. On habeas review, I may not disturb the credibility determinations of the fact-finder, which are entitled to great weight. *See United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (The "jury is exclusively responsible for determining a witness' credibility."). Viewing the proof in the light most favorable to the prosecution and drawing all possible inferences in the prosecution's favor, a rational trier of fact could have found that Whitlatch's conduct during the burglary was a contributing factor in the victim's death. Therefore, habeas relief is not warranted on Whitlatch's insufficiency claim.

## III. Sentence was cruel and unusual under the 8th Amendment

Whitlatch asserts that his sentence of 25 years to life amounts to cruel and unusual punishment under the Eighth Amendment because it is disproportionate to the crime of felony murder for which he was convicted. On direct appeal, the court held that "[i]n view of the fact that defendant victimized an elderly citizen to obtain

drug money ... the imposition of the maximum permissible sentences on the felony murder counts is not unduly harsh or severe." *People v. Whitlatch*, 294 A.D.2d at 910, 742 N.Y.S.2d 752.

■ I note at the outset that because a habeas court must grant considerable deference to legislatively mandated terms of imprisonment, it is "exceedingly rare" for a petitioner to successfully challenge his sentence. *Ewing v. California*, 538 U.S. 11, 22, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (quoting *Hutto v. Davis*, 454 U.S. 370, 374, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (*per curiam*)); *accord Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ("Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals."). Indeed, the Second Circuit has broadly stated in *dicta* that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) (*per curiam*) (citations omitted).

Nonetheless, case law reflects that a habeas court should not defer to a state sentence "in extreme circumstances such as where the punishment is barbaric or vastly disproportionate to the crime committed." *Salcedo v. Artuz*, 107 F.Supp.2d 405, 414 (S.D.N.Y.2000) (citing, *inter alia*, *Solem v. Helm*, 463 U.S. at 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (finding sentence of life without possibility of parole disproportionate to crime of uttering a "no account" check for $100); *accord United States v. Certain Real Prop. & Premises Known as 38 Whalers Cove Drive, Babylon, N.Y.*, 954 F.2d 29, 38 (2d Cir.) ("The Cruel and Unusual Punishment Clause prevents the imposition of a punishment

which is 'grossly disproportionate' to the crime committed.") (citation omitted)), *cert. denied*, 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992).

■ On habeas review, however, I am limited to determining whether the Appellate Division's decision affirming Whitlatch's sentence was "contrary to, or involved an unreasonable application of," the "gross disproportionality principle" articulated in prevailing Supreme Court precedent. *See Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (noting that "clearly established" legal principle for purposes of 28 U.S.C. § 2254(d)(1) is that "[a] gross disproportionality principle is applicable to sentences for terms of years"; conceding, however, that prior Supreme Court "cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality"). In deciding whether a penalty is grossly disproportionate to the offense, the Supreme Court has indicated that a court should consider "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 463 U.S. at 292, 103 S.Ct. 3001; *accord United States v. Bennett*, 252 F.3d 559, 567 (2d Cir.2001), *cert. denied*, 535 U.S. 932, 122 S.Ct. 1307, 152 L.Ed.2d 217 (2002). The Supreme Court has explained that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Solem*, 463 U.S. at 290 n. 16, 103 S.Ct. 3001.

Although Whitlatch's sentence of twenty-five years to life represents the maximum sentence allowable for the crime of felony murder, it nevertheless is within the permissible statutory range for such a conviction. New York courts routinely impose and affirm sentences of twenty-five

years to life for convictions on the charge of felony murder. *See, e.g., People v. McCullough,* 278 A.D.2d 915, 718 N.Y.S.2d 526 (4th Dep't 2000); *People v. Mastin,* 261 A.D.2d 892, 690 N.Y.S.2d 801 (4th Dep't 1999); *People v. Hill,* 266 A.D.2d 929, 697 N.Y.S.2d 884 (4th Dep't 1999). Furthermore, Whitlatch was not a first-time offender. He had a prior felony conviction and was sentenced as a second felony offender.

Whitlatch's sentence does not come near to approaching the outer limits of what the Supreme Court has determined to be permissible punishments under the Eighth Amendment. *See Lockyer v. Andrade,* 538 U.S. at 77, 123 S.Ct. 1166 (holding that petitioner's sentence under California "three strikes" recidivist statute of two consecutive terms of 25 years to life for stealing approximately $150 in videotapes was not grossly disproportionate in violation of the Eighth Amendment); *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556, *supra* (where defendant was sentenced to two consecutive terms of 20 years in prison for possession with intent to distribute nine ounces of marijuana and distribution of marijuana, Eighth Amendment not violated). Therefore, federal habeas relief is not warranted with respect to Whitlatch's sentence in this case.

## CONCLUSION

For the reasons stated above, Richard Whitlatch's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Whitlatch has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253.

**IT IS SO ORDERED.**