968 A.2d 1123

**Carol F. SIMMONS**

v.

**COMFORT SUITES HOTEL, et al.**

**No. 241, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

March 31, 2009.

204

Robert J. Zarbin (Jaklitsch Law Group, on the brief), Upper Marlboro, for Appellant.

James S. Maloney (Semmes, Bowen & Semmes, on the brief), Baltimore, for Appellee.

Panel: WRIGHT, MATRICCIANI, GRAEFF, JJ.

GRAEFF, Judge.

Appellant, Carol F. Simmons, appeals from the order of the Circuit Court for Queen Anne's County reversing a workers' compensation award in her favor and granting summary judgment to appellees, Comfort Suites Hotel, and its insurer,

Selective Insurance Company of North America (collectively, "Comfort Suites"). On appeal, Ms. Simmons presents the following issues:

I. Is the installation of an alarm system to allay the post-traumatic fears of a robbery victim a cognizable medical expense under Maryland's Workers' Compensation law?

II. If the answer to Question I is in the affirmative, should the decision of the Workers' Compensation Commission be affirmed?

For the reasons set forth below, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from injuries that Ms. Simmons received while working as a night auditor at the Comfort Suites Hotel in Chestertown, Maryland. On September 25, 2006, at approximately 2:00 a.m., she was brutally attacked with a baseball bat during an attempted robbery of the hotel. Left for dead, the 67–year–old victim was found hours later, lying unconscious in a pool of blood.

Paramedics rushed Ms. Simmons to the University of Maryland Shock Trauma Center, where she was treated for severe traumatic brain injury, diffuse cerebral edema, and multiple skull fractures. On October 6, 2006, she was transferred to Kernan Hospital. After her discharge on December 5, 2006, the Kernan Team recommended that Ms. Simmons receive supportive care and outpatient rehabilitation services at home.

On September 29, 2006, Ms. Simmons filed a claim with the Maryland Workers' Compensation Commission (the "Commission") for the injuries she sustained in the attack. Comfort Suites did not contest the underlying compensability of the claim, and it paid for medical treatment for Ms. Simmons. The Commission awarded Ms. Simmons temporary total disability benefits.

Ms. Simmons thereafter requested that Comfort Suites provide her with a home security system to allay her fear of a

home intruder. The Commission held a hearing on Ms. Simmons' request on September 14, 2007. In support of her claim, Ms. Simmons submitted a March 23, 2007, letter from Dr. M. Sementilli, a neuropsychologist. Dr. Sementilli wrote, in part:

> I continue to follow the neurobehavioral recovery of Ms. Simmons. Even though she continues to demonstrate cognitive and physical gains, her mood remains anxious to fear of additional assaults. Her anxiety increases in the evening despite the presence of her son(s) who reside upstairs during the night. Ms. Simmons continues to fear that the perpetrator or associates, or random intruders may attempt to harm her. She is hyper vigilant to noises outside and inside the house. The resulting anxiety, ruminations and hyper vigilance are contributing to ongoing insomnia and fear.
>
> To conclude, as her treating neuropsychologist I would strongly recommend that an in home security system be installed. If so I am confident that Ms. Simmons will experience a reduction in fear, vigilance and resulting anxiety. I believe this is a reasonable request for any individual who has been assaulted and continues to be vulnerable during their recovery period.

Comfort Suites did not introduce any medical evidence rebutting Dr. Sementilli's opinion that Ms. Simmons' anxiety would be reduced with the installation of an alarm system, noting that it was addressing the claim "strictly from a legal standpoint." Comfort Suites argued that the Workers' Compensation statute did not cover a home security system because it was not "medical treatment" pursuant to the statute. In support of its position, Comfort Suites cited *R & T Constr. Co. v. Judge*, 323 Md. 514, 531, 594 A.2d 99 (1991), for the proposition that modifications to a home constitute medical treatment only when they provide "access for necessities," such as modifications that provide a quadriplegic access to physically travel in the home.

The Commissioner disagreed with the argument that a home security system was not covered under the Workers' Compensation statute, stating:

Ironically, I think this home modification ... the request is probably designed to do more potential good for the condition of the patient than the modification that you've cited in terms of access. Access is for someone whose condition is not going to get any better. This modification will theoretically make the condition better. It's more reason to do this than the other.

The other is kind of vague, acknowledgment that it's the civil thing to do if someone is a paraplegic or quadriplegi[c], you're improving the standard of the quality of their life. This has the double purpose of improving the quality of her life, and possibly the medical condition. I think with medical documentation from him, I think it's appropriate.

On October 10, 2007, the Commission issued an order granting Ms. Simmons' request for a home security system. Specifically, the order required Comfort Suites to "authorize medical treatment for [Ms. Simmons] of home modification of installation of a home security system to reduce stress and fear per treating physician."

On October 30, 2007, Comfort Suites filed in the Circuit Court for Queen Anne's County a Petition for Judicial Review of the Commission's decision. On March 18, 2008, the circuit court held a hearing on the parties' cross-motions for summary judgment. Counsel for Ms. Simmons argued that the home security system qualified as medical treatment because (1) it would "assist her in her recovery from the injuries she sustained both physically and emotionally," and (2) Comfort Suites had not produced a medical opinion that she did not need this system to recover from the attack.

Comfort Suites did not take issue with the doctor's recommendation that a home security system be installed; counsel stated: "I completely understand and frankly agree with" the need for a home security system for her peace of mind. Comfort Suites stated:

[W]hat [counsel for Ms. Simmons] is focusing on is not the right thing here. We're here on a motion for summary judgment.

As Your Honor knows, there's no dispute as to any material facts. I'm not disputing that she may need, from a medical standpoint as Dr. Simantelli [*sic*] says, this home security system to help her with whatever problems she may have. That's not the point.

The point is legally she's not entitled to the home security system under the Maryland Workers' Compensation Statute. They need to clear the first hurdle, which is: Is she even entitled to it under the statute?

This is not a medical question. It's a legal question. Legally is she entitled to it under the statute? The answer is no unfortunately, because what we're talking about here is the medical treatment in the form of a home modification.

Comfort Suites argued that, pursuant to *Judge,* 323 Md. at 530–31, 594 A.2d 99, modifications to a claimant's home are considered medical treatment under the statute only if the modification provides access to necessities. Because a home security system would not provide necessary access, it was not "medical treatment" that was covered by the Maryland Workers' Compensation Statute.

The circuit court concluded that the question whether Ms. Simmons is entitled to a home security system under the Maryland Workers' Compensation Act "is a legal, not a factual question." The court stated that it "agrees with the proposition that this is not something that's contemplated either by the statute or the [*Judge* ] case."

On March 28, 2008, the circuit court entered a written order granting Comfort Suites' Motion for Summary Judgment and ordering "that the decision of the Maryland Workers' Compensation Commission dated October 10, 2007 is REVERSED as it relates to the installation of a home security system." This appeal followed.

## STANDARD OF REVIEW

Before addressing the merits of this case, we must address the applicable standard of review. Ms. Simmons argues that decisions of the Commission are entitled to a "presumption of correctness" under Md.Code (2008 Repl.Vol.), § 9–745 of the Labor and Employment ("L.E.") Article. Accordingly, she argues, the decision of the Commission satisfied her *prima facie* case, and the circuit court could not grant summary judgment against her when Comfort Suites "offered no medical evidence to controvert the opinion of [her] treating health care provider that the alarm system was an important component to [her] treatment plan."

Ms. Simmons is correct that, pursuant to L.E. § 9–745(b), on appeal: (1) "the decision of the Commission is presumed to be prima facie correct," and (2) "the party challenging the decision has the burden of proof." The Maryland appellate courts have made clear, however, that the language regarding the presumption of correctness of the Commission's decision does not apply to all issues, but rather, it "is only pertinent when the issue on appeal to the circuit court is one of fact and not of law." *Board of Educ. v. Spradlin,* 161 Md.App. 155, 173, 867 A.2d 370 (2005). *Accord Beyer v. Decker,* 159 Md. 289, 291, 150 A. 804 (1930) (presumption of correctness does not apply where the question "is one of statutory construction, and one of law for the court"); *Symons v. R.D. Grier & Sons Co.,* 10 Md.App. 498, 500, 271 A.2d 398 (1970) (presumption of correctness "has no application where the question is one of law instead of fact").

Here, on appeal in the circuit court, the parties each filed a motion for summary judgment asking the circuit court to rule in its favor, as a matter of law, on the issue whether a home security system constitutes a compensable medical expense under the Workers' Compensation statute. In resolving that question of law, there was no presumption of correctness of the Commission's decision that precluded the circuit court from granting Comfort Suites' motion for summary judgment.

We review *de novo* a trial court's grant of summary judgment. *Baltimore County v. Kelly,* 391 Md. 64, 73, 891 A.2d 1103 (2006); *Youngblud v. Fallston Supply Co., Inc.,* 180 Md.App. 389, 399, 951 A.2d 118, *cert. denied,* 406 Md. 114, 956 A.2d 203 (2008). Summary judgment is appropriate "if there is no genuine dispute of material fact and ... the moving party is entitled to judgment as a matter of law." *Id.* " 'A material fact is a fact that, depending on how it is decided by the trier of fact, will affect the outcome of the case.' " *Rivers v. Hagner Mgmt. Corp.,* 182 Md.App. 632, 646, 959 A.2d 110 (2008) (quoting *Mandl v. Bailey,* 159 Md.App. 64, 82, 858 A.2d 508 (2004)). We determine whether any material facts are in dispute, and, if not, we determine whether the court was legally correct in its ruling. *Newell v. Runnels,* 407 Md. 578, 630, 967 A.2d 729 (2009).

## DISCUSSION

### I.

This case concerns L.E. § 9–660, which provides, in pertinent part:

(a) *In general.*—In addition to the compensation provided under this subtitle, if a covered employee has suffered an accidental personal injury, compensable hernia, or occupational disease the employer or its insurer promptly shall provide to the covered employee, as the Commission may require:

(1) medical, surgical, or other attendance or treatment;

(2) hospital and nursing services;

(3) medicine;

(4) crutches and other apparatus; and

(5) artificial arms, feet, hands, and legs and other prosthetic appliances.

(b) *Duration.*—The employer or its insurer shall provide the medical services and treatment required under subsection (a) of this section for the period required by the nature

of the accidental personal injury, compensable hernia, or occupational disease.

This Court has interpreted this statute as dealing "with medical services necessary or desirable to treat the effects of the injury...." *Harris v. Janco Enter.*, 53 Md.App. 674, 677, 455 A.2d 453 (1983).[1]

The question here focuses on the scope of § 9–660(a)(1), and whether a home security system can be considered to be medical treatment under the statute.[2] Ms. Simmons argues that there is evidence from her doctor that she needs a home security system to help her recover from her injuries, and, under these circumstances, the "installation of an alarm system to allay the post-traumatic fears of a robbery victim" is medical treatment under the statute.

Comfort Suites makes no argument that medical treatment to allay the psychological effects of an injury falls outside the scope of medical treatment under the statute. *See Belcher v. T. Rowe Price*, 329 Md. 709, 745–46, 621 A.2d 872 (1993) (mental injury may be compensable under Workers' Compensation Act.) *Accord* RICHARD P. GILBERT & ROBERT L. HUM-PHREYS, JR., MARYLAND WORKERS' COMPENSATION HANDBOOK § 10.3 (3d ed. 2007) ("Claims for psychiatric treatment" have been held compensable as medical treatment.). Indeed, during oral argument in this Court, counsel for Comfort Suites conceded that if, instead of a home security system to reduce anxiety and insomnia, a doctor had recommended medication for this purpose, it would be covered under the statute.

---

1. In *Harris*, we were interpreting Md.Code (1957, 1979 Repl.Vol.), Art. 101, § 37(a), which was substantially the same as L.E. § 9–660. We held that the statute did not cover services rendered by a physician "for the purpose of evaluating the extent of disability in order to present testimony on that issue." *Id.* at 677, 455 A.2d 453.

2. A home security system clearly does not constitute surgical treatment. And Ms. Simmons does not contend that it falls in the category of attendance, as enumerated in § 9–660(a)(1). *See* Random House DIC-TIONARY OF THE ENGLISH LANGUAGE 133 (2d ed.1987) (defining "attendance" as "the act of attending," and defining "attend," *inter alia*, as "to take care of; minister to; devote one's services to....")

Comfort Suites argues, however, that a home security system, as a matter of law, is not medical treatment as contemplated by the statute, and therefore, the circuit court properly granted its motion for summary judgment.

Both parties rely exclusively on *R & T Constr. Co. v. Judge,* 323 Md. 514, 594 A.2d 99 (1991), in support of their contentions. We agree that *Judge* is instructive, but for reasons other than those relied on by the parties.

As explained below, we reverse the circuit court's order granting summary judgment in favor of Comfort Suites based on its finding that a home security system, as a matter of law, does not constitute medical treatment under § 9–660(a)(1). We recognize that a home security system typically is not viewed as a form of medical treatment. The Maryland Court of Appeals, however, has found that items that are not intrinsically medical in nature could constitute medical treatment if there is evidence that the item conveys a medical benefit. Thus, the question whether a home security system constitutes compensable medical treatment pursuant to § 9–660(a)(1) is a factual question to be resolved on the evidence in each particular case.

Under the unique circumstances of this case, where the claimant was brutally attacked, where she suffered both physical and mental disability as a result of the attack,[3] and where her treating neuropsychologist recommended a home security system to improve her medical condition by reducing her anxiety and resulting insomnia, the trier of fact could find that a home security system constituted medical treatment pursuant to the statute. Accordingly, we will remand for further proceedings.

## A.

### Statutory Construction

In determining the meaning of medical treatment under § 9–660, we must apply settled principles of statutory inter-

---

**3.** Counsel for Ms. Simmons advised at oral argument that Ms. Simmons suffers both physical and mental disabilities.

pretation. In *Green v. Carr Lowery Glass Co., Inc.,* 170 Md.App. 502, 907 A.2d 845 (2006), *aff'd,* 398 Md. 512, 921 A.2d 235 (2007), another case interpreting the language of the Workers' Compensation statute, this Court stated:

> As this Court repeatedly has made clear, the paramount goal of statutory interpretation is to identify and effectuate the legislative intent underlying the statute(s) at issue. The legislative intent of a statute primarily reveals itself through its very own words. As a rule, we view the words of a statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood. If the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise: we need investigate no further but simply apply the statute as it reads. Even so, we do not view the plain language of a statute in a vacuum. As we have often reiterated,
>
> > "While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears."

*Id.* at 508, 907 A.2d 845 (quoting *Derry v. State,* 358 Md. 325, 335–36, 748 A.2d 478 (2000)).

The Court of Appeals has explained the background of the Workers' Compensation Act:

> The Maryland Workmen's Compensation Act was enacted in 1914 to compensate employees who were injured in the course of their employment. The statute took the place of the common law tort system, which proved to be an inadequate means of compensating employees for their work-related injuries. [T]he statute struck a delicate balance between workers and employers:
>
> > Workers lost their right to sue their employers for negligence but gained the right to quick and certain compensation for injuries sustained during the course of their

employment, regardless of fault. In return, employers lost their defenses of contributory negligence, assumption of risk, and fellow servant rule but gained the advantage of having their liability limited.

*Brady v. Ralph Parsons Co.*, 308 Md. 486, 496–97, 520 A.2d 717 (1987) (footnotes and citations omitted).

The purpose of the Act was

"to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment," *Howard Co. Ass'n, Retard. Cit. v. Walls*, 288 Md. 526, 531, 418 A.2d 1210 (1980), and "to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries." *Paul v. Glidden Co.*, 184 Md. 114, 119, 39 A.2d 544, 546 (1944).

*Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 474, 784 A.2d 569 (2001).

In *Breitenbach*, the Court of Appeals stated that, when interpreting the Maryland Workers' Compensation Act, a court should keep in mind that "the Act is remedial in nature and 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.'" *Id.* at 472, 784 A.2d 569 (quoting *Para v. Richards Group*, 339 Md. 241, 251, 661 A.2d 737 (1995)). "[A]pplying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant." *Id.* at 473, 784 A.2d 569. The Court cautioned, however, that it "may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail. . . . Similarly, the Court may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant." *Id.*

## B.

## Medical Treatment

In accordance with the liberal construction to be given the Workers' Compensation Act, the Court of Appeals has given a broad construction of the terms in § 9–660, including the term medical treatment. In *A.G. Crunkleton Electric Co., Inc. v. Barkdoll*, 227 Md. 364, 177 A.2d 252 (1962), the Court gave a liberal construction of the term "nursing services" under the statute, rejecting the argument that it was limited to professional health care providers and holding that it included services rendered at home by the claimant's wife, who was not a professional nurse. *Id.* at 371, 177 A.2d 252.[4] Moreover, in *Breitenbach*, the Court held that, because § 9–660 was not clear and unambiguous regarding whether an employer was obligated to reimburse an employee for travel expenses incurred to receive medical treatment, the ambiguity was resolved in favor of the claimant. 366 Md. at 484, 784 A.2d 569. Accordingly, the Court held that travel expenses were covered medical benefits under § 9–660. *Id.*

In *Judge*, the sole authority relied upon by both parties, the Court of Appeals similarly gave a liberal construction of the term medical treatment. 323 Md. at 530, 594 A.2d 99. In that case, Judge was completely paralyzed from the neck down due to a fall from a third story window while constructing townhouses. *Id.* at 517, 594 A.2d 99. He was confined to his bed or his wheelchair and was attended round-the-clock by nurses. *Id.* Judge sought modifications to his residence, among other things. *Id.* at 517–18, 594 A.2d 99. The Court, similar to here, was presented with an absolute position; the employer argued that modifications to a residence of a paraplegic or quadriplegic fell outside the scope of medical treatment or services under the statute. *Id.* at 525, 594 A.2d 99.[5] The

---

4. In *A.G. Crunkleton*, the Court construed Md.Code (1957), Art. 101, § 36(a), which was substantively the same as § 9–660.

5. In *R & T Constr. Co. v. Judge*, 323 Md. 514, 531, 594 A.2d 99 (1991), the Court of Appeals was interpreting Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 37(a), which was substantially the same as § 9–660.

Court rejected that narrow construction, noting that the statute was to be liberally construed in favor of the claimant. *Id.* at 531, 594 A.2d 99.

The Court noted that other jurisdictions with similar statutes had "recognized an obligation, depending on the particular facts before them, for some form of modification to living quarters to allow persons in wheelchairs the essentials of everyday life." *Id.* at 525, 594 A.2d 99. It held:

> The wheelchair confined claimant who has had an established residence is denied access to traditional medical treatment, under an implied circumstance of its rendition, if the home is not wheelchair accessible. The wheelchair is a medical "apparatus," and, without wheelchair accessibility, use of the apparatus is denied in the location where the General Assembly would expect the wheelchair most commonly to be used. Similarly, it is a medical necessity that the wheelchair bound claimant who could use a toilet without assistance have access to the bathroom of the home. We hold that § 37(a) includes within the concept of medical treatment reasonable modifications to a claimant's home that allow necessary access for claimants confined to wheelchairs as a result of their compensable injuries.

*Id.* at 529–30, 594 A.2d 99.

■ The parties, not surprisingly, construe *Judge* differently. Ms. Simmons contends that *Judge* supports her argument that medical treatment pursuant to § 9–660 includes home modifications such as an alarm system. She contends that

> Judge stands for the proposition that Maryland Workers' Compensation law does not limit medical benefits to the hands-on administration of medical care, i.e. physical therapy or the prescribing of medication. Rather, when a work-related disability generates a need for modification of one's home, the alteration qualifies as a medically-generated benefit.

Although Ms. Simmons overstates when a modification of a home is authorized pursuant to *Judge,* we agree that the case stands for the proposition that the term medical treatment should not be construed narrowly.

Comfort Suites focuses on the limitations *Judge* imposed regarding when a home modification will constitute medical treatment, and it argues that these limitations establish that a home security system does not constitute medical treatment pursuant to the statute. Initially, Comfort Suites argues that "*Judge* appears to include home modifications as an appropriate form of medical treatment under the Act only when the claimant is confined to a wheelchair or physically disabled in at least some form." Comfort Suites claims that Ms. Simmons is not disabled to the point that she is confined to a wheelchair.

Moreover, Comfort Suites argues that the Court in *Judge* made clear that not all home modifications would qualify as medical treatment, but only those modifications that provided access for necessities. In *Judge*, the remodeling of the home, which would have allowed Judge to independently move his wheelchair to various areas of the home, would have improved Judge's quality of life. 323 Md. at 530, 594 A.2d 99. Because Judge would still need a full-time attendant, however, the alterations would not allow Judge to be self-sufficient regarding necessities. *Id.* The Court stated:

> We remain mindful that the act is to receive a liberal construction. Nevertheless, in the area of modifications to a residence, the concept of medical treatment under § 37(a) must be limited to access for necessities. Here the purpose of the possible improvements goes beyond the necessities already being provided, and seeks to give Judge a sense of increased independence and self-worth. Under the circumstances here that goal is beyond the process of construction of § 37(a). Were we to depart from the standard of access to necessaries that may be implied in medical treatment, there would be no statutory standard to guide the Commission in determining the extent of an insurer's obligation to make alterations to a claimant's residence.

*Id.* at 531, 594 A.2d 99.

Comfort Suites argues that a security system does not qualify as a mechanism for "access to a necessity." Although

acknowledging that it may increase Ms. Simmons' sense of security and potentially "improve the quality of her life," it argues that is not the standard. The standard, Comfort Suites argues, is whether the home modification "would allow a physically disabled claimant access in his or her home to necessities," a standard which was not met by the request for a security system.

We agree with Comfort Suites that the portion of the opinion in *Judge* upon which the parties rely was addressing physically disabled claimants seeking home modifications to provide wheelchair access. It was in that context that the court held that home improvements constitute medical treatment only if they provide "necessary access." This part of the opinion is not dispositive, however, of the question whether a home security system, which a medical professional has recommended to relieve the effects of Ms. Simmons' injury, could constitute medical treatment under the statute.

We find another portion of the opinion in *Judge* to be more applicable to the issue presented here, *i.e.,* whether a device or service that is not inherently medical in nature can qualify as medical treatment if it conveys a medical benefit. In *Judge,* the claimant requested, in addition to home modifications, that his employer pay for the cost of heating and air conditioning in his residence. *Id.* at 521–22, 594 A.2d 99. Judge argued that the employer should pay part of the cost because his injury resulted in a lack of normal body temperature controls and a limited tolerance to temperature change. *Id.* The Court of Appeals held: "On this record the Commission could find that the air conditioning is medical treatment." *Id.* at 522, 594 A.2d 99.[6] Thus, that an air conditioner is not typically viewed as medical treatment did not, as a matter of law, preclude it from constituting medical treatment under the facts of the case.

---

6. The case was remanded for further proceedings with respect to this claim. *Judge,* 323 Md. at 532, 594 A.2d 99.

Other jurisdictions similarly have held that devices and services that are not inherently medical in nature may, under the circumstances of a particular case, constitute medical benefits under the Workers' Compensation statute. *See, e.g., Bellone v. Indus. Claim Appeals Office,* 940 P.2d 1116, 1117 (Colo.Ct.App.1997) (child care expenses covered as medical treatment; services "medical" in nature because they relieved the symptoms and effect of the injury and allowed claimant to deal with fatigue, depression, and other symptoms resulting from serious head trauma); *City & County of Denver v. Indus. Comm'n,* 682 P.2d 513, 515 (Colo.Ct.App.1984) (hot tub found to be medical supply based on medical testimony regarding significant benefit to claimant); *Haga v. Clay Hyder Trucking Lines,* 397 So.2d 428, 432 (Fla.Dist.Ct.App.1981) (swimming pool with handicapped facilities found medically necessary where prescribed by severely burned claimant's physicians), *pet. denied,* 402 So.2d 609 (Fla.1981); *State ex rel. Miller v. Industrial Comm'n,* 71 Ohio St.3d 229, 643 N.E.2d 113, 115–16 (1994) (weight-loss program covered as medical services if it aids in recovery of compensable injury); *In re Comp. of Gordon,* 60 Or.App. 361, 653 P.2d 1019, 1020 (1982) (doctor-prescribed waterbed, "for correction of low back condition," covered under statute providing for "medical services"); *ARA Servs. and Reliance Ins. Co. v. Swift,* 22 Va.App. 202, 468 S.E.2d 682, 684–85 (1996) (home exercise station compensable when prescribed by physician as medically necessary to remedy effects of injury).

In New York, the Worker's Compensation Statute requires an employer to pay for "medical ... or other attendance or treatment ... as the nature of the injury or the process of recovery may require." N.Y. WORKERS' COMP. LAW § 13(a) (2009). New York courts have construed this statute broadly to cover expenses necessary to aid in the recovery of the claimant or to relieve the symptoms of the injury, even if the "treatment" is not inherently medical in nature.

In *Morrell v. Onondaga County,* 244 A.D.2d 695, 664 N.Y.S.2d 168 (1997), a claimant who suffered from chronic sinusitis and upper airway irritation caused by work-related

exposure to formaldehyde requested that her employer pay for items recommended by her doctor to lessen her symptoms. *Id.* at 169. The claimant's doctor recommended: organic food, to prevent exposure to irritating chemicals in conventional food products; an air filtration system, to remove irritants from her environment; and vitamin supplements, to improve the claimant's suppressed immune system. *Id.* at 170. The court held that, under the circumstances of the case, these items were compensable under the statute.

Similarly, in *Clark v. Fedders–Quigan Corp.*, 284 A.D. 430, 131 N.Y.S.2d 575, 576–77 (1954), the issue was whether travel expenses for a trip to Florida constituted medical treatment under the statute. The doctor for the claimant, who was disabled by emphysema, recommended a trip to a warmer climate to relieve the claimant's symptoms. *Id.* at 577. The court declined to rule, as a matter of law, that these expenses were not covered by the statute. *Id.* Noting that there was nothing in the statute that restricted a liberal interpretation of the term medical treatment, the court stated that "whether a change of climate advised by a physician is medical treatment within the meaning of the statute becomes in each instance a question of fact." *Id.*

We agree with this approach. We hold that the determination whether a device or service constitutes medical treatment under the statute should not be based, as a matter of law, on whether the device or service is inherently medical in nature. Rather, where there is a recommendation from a medical professional that a device or service be provided because it will provide therapeutic medical relief from the effects of the injury, the determination whether it is compensable medical treatment is a question of fact that should be determined under the circumstances of the particular case.[7]

---

7. To be compensable, a service or device must be shown to be medically necessary. *See* Code of Maryland Regulations 14.09.03.07 ("Medical records are the basis for determining whether a particular treatment or service is medically necessary and, therefore, reimbursable"). *Accord* RICHARD P. GILBERT & ROBERT L. HUMPHREYS, JR, MARYLAND WORKERS'

## C.

### Home Security System

■ Applying this analysis, we find that a home security system, although not intrinsically medical in nature, could, under the particular facts of a case, constitute medical treatment. Here, the claimant was brutally attacked, and she suffered a physical and mental disability. Ms. Simmons' treating neuropsychologist recommended a home security system to provide relief from the effects of her injury by reducing her anxiety and allowing her to sleep.

■ The Commission, in finding that a home security system was covered as medical treatment under § 9–660, recognized the potential medical benefit, stating: "This has the double purpose of improving the quality of her life, and possibly the medical condition. I think with medical documentation from him, I think it's appropriate." The Commission's interpretation of the Workers' Compensation statute, regarding what constitutes medical treatment, should be given some deference by the reviewing courts. *See Breitenbach v. N.B. Handy Co.*, 366 Md. at 485, 784 A.2d 569 ("[A]n administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.") (quoting *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376 (1999)).

■ We hold that, under the unique circumstances of this case, the circuit court erred in ruling, as a matter of law, that a home security system is not medical treatment pursuant to § 9–660. We want to make clear, however, the limited nature of our holding. We are not suggesting that a home security system is likely to be found to constitute medical treatment in the typical case. Nor are we suggesting that it is so in this case. We are merely holding that it could constitute medical

COMPENSATION HANDBOOK § 10.1 (3d ed. 2007) (Act requires that employer furnish employee with all necessary medical treatment).

treatment under the facts of this case, and the issue should be resolved by the trier of fact rather than as a matter of law.[8]

## II.

### Remedy

 Having determined that the circuit court erred in granting summary judgment in favor of Comfort Suites, the next question is the proper remedy. Ms. Simmons notes that, at the Commission and on appeal to the circuit court, Comfort Suites "staked their entire defense" on the argument that "an alarm system is not a cognizable medical expense," and it did not dispute "that she may need, from a medical standpoint," the security system. Accordingly, now that this Court has determined that the circuit court erred in holding, as a matter of law, that a security system is not a medical expense, Ms. Simmons contends that the case need not be remanded to the circuit court, but rather, the Commission's decision should be affirmed. We disagree.

 As Judge Moylan explained in *Spradlin,* an appeal from the Workers' Compensation Commission may follow " 'two alternative modalities.' " 161 Md.App. at 166, 867 A.2d 370 (citing *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 364, 689 A.2d 1301 (1997)). The first modality is an "unadorned administrative appeal" pursuant to L.E. § 9–745(c) and (e), which is referred to as an appeal "on the record of the Commission." *Id.* at 167–68, 170, 867 A.2d 370. With this

---

8. At oral argument in this Court, counsel for Comfort Suites listed reasons why, in light of the other services provided to Ms. Simmons, a home security system was not compensable medical treatment. Comfort Suites noted that it was already providing Ms. Simmons with a health aid 14 hours a day and a "Life–Line." *See Whitlatch v. Senkowski,* 344 F.Supp.2d 898, 900 (W.D.N.Y.2004) (describing a "Life–Line" as an "emergency communication device"). Although the other benefits provided are not relevant to the issue whether, as a matter of law, a home security system is medical treatment, they may be relevant to the issue whether it is compensable medical treatment. Section 9–660(a) gives the Commission discretion in determining whether medical benefits are compensable, stating that the employer "shall provide" the listed medical benefits "as the Commission may require."

type of appeal, "no new evidence is taken nor is any fresh fact-finding engaged in. The determination of whether the decision of the Commission was free from error will entail only an examination of the record of the proceedings before the Commission." *Id.* at 170, 867 A.2d 370. Thus, "[w]hen a case is submitted to the trial judge on the basis of the record made before the Commission, the judge reads the record and makes his or her decision according to what the judge perceives the record to reveal." GILBERT & HUMPHREY, supra, § 17.05[1].

The second modality, by contrast, is the "essential trial *de novo*," or the "administrative appeal plus," under L.E. § 9–745(d). *Spradlin*, 161 Md.App. at 171, 867 A.2d 370. Subsection (d) provides that the court should, "[o]n a motion of any party," "submit to a jury any question of fact involved in the case." *Id.* At a trial *de novo*, the " 'burden is upon the appellant to overcome the presumption that the decision of the Commission is prima facie correct.' " *Id.* at 183, 867 A.2d 370 (quoting *Abell v. Albert F. Goetze, Inc.*, 245 Md. 433, 437, 226 A.2d 253 (1967)). "This can be done by submitting new evidence," or by relying on the record before the Commission. *Id.* at 183, 867 A.2d 370 (quoting *Abell*, 245 Md. at 437, 226 A.2d 253). The jury should be instructed of the Commission's earlier decision "and of its presumptive correctness and will be entitled to give it evidentiary significance." *Id.* at 194, 226 A.2d 253 (quoting *Am. Airlines Corp. v. Stokes*, 120 Md.App. 350, 360, 707 A.2d 412 (1998)). The " 'Commission's decision is merely *evidence* of a particular fact (or facts) which, as with all evidence, the jury is free to disregard if it finds it to be incredible.' " *Kelly*, 391 Md. at 76, 891 A.2d 1103 (quoting *Holman v. Kelly Catering, Inc.*, 334 Md. 480, 484, 639 A.2d 701 (1994)).

Here, Ms. Simmons requested a jury trial in the circuit court. In so doing, she sought essentially *de novo* review, which entitled Comfort Suites to introduce additional evidence regarding whether a home security system constituted compensable medical treatment under the facts of this case. Before receiving a *de novo* jury trial, however, the parties

filed motions for summary judgment. Now that we have found the grant of summary judgment to be improper, the appropriate remedy is to remand to the circuit court for the requested trial *de novo* before a jury. At that point, both parties can submit additional evidence, and the trier of fact will determine, under the particular facts of this case, whether a home security system to allay the anxiety and insomnia of Ms. Simmons constitutes compensable medical treatment under § 9–660.

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.**